# CHARLESTON.

NORFOLK & WESTERN RAILWAY COMPANY *v.* PUBLIC SERVICE
COMMISSION.

Submitted May 10, 1922.    Decided May 30, 1922.

1.  RAILROADS—*Commission Empowered to Require Public Service
    Facility.*

    The Public Service Commission, by virtue of sections 4, 5
    and 11, chapter 15-0, Barnes' Code 1918, upon the application
    of any person, firm or corporation, has power to require a
    railway company to conform its conduct and policies to the
    laws of the State, and to all rules, regulations and orders of
    the commission not contrary to law, and to prevent the dis-
    continuance of any regular or other public service facility,
    without first obtaining its authority to do so.    (p. 417).

2.  SAME—*Suitable Public Facilities May Be Required.*

    Under the statute a railway company may be required by the
    Public Service Commission to establish and maintain such
    suitable public facilities and conveniences as may be just and
    reasonable.    (p. 419).

3.  SAME—*Crossing May Be Required As a Reasonable Facility.*

    A railway crossing which has been in use for many years
    may rightfully be regarded as a reasonable facility which the
    Public Service Commission may require the railway company
    to maintain and continue upon such reasonable terms and
    conditions as may be prescribed.    (p. 419).

4.  SAME—*Commission Order Requiring Crossing Not Reviewable,
    Unless Unjust.*

    Where, upon the application of a shipper to the Public Ser-
    vice Commission, and due notice to the railway company, and
    a full hearing before the commission pursuant to the statute,
    the commission has ordered the carrier to construct and
    maintain a railway crossing at a particular point for con-
    venience in the transaction of business between carrier and
    shipper, the order of the commission will not be reversed here,
    unless it is beyond the statutory power of the commission, or
    contrary to some provision of the state or federal constitution,
    or amounts to an unreasonable and unjust exercise of its
    power.    (p. 419).

5.  CONSTITUTIONAL LAW—*Process Issued By Public Service Com-
    mission and Right to Be Heard Before it and to Review*

*Held to Satisfy Provisions of State and Federal Constitutions.*

In such a proceeding the process of the Public Service Commission, with right to be heard before it and to have its orders reviewed here as to all matters involved, satisfies the requirement of due process and other rights protected by the state and federal constitutions.   (p. 423.)

Petition by the Norfolk & Western Railway Company against the Public Service Commission and another for suspension of the order of the Commission.

*Petition dismissed.*

*Holt, Duncan & Holt, Theo. W. Reath, Lucian H. Cocke* and *L. H. Cocke, Jr.,* for petitioner.

*Bias & Chafin,* for respondent Followay.

MILLER, JUDGE:

Upon the petition of plaintiff for the continuance and maintenance of a grade crossing at McCarr Siding, Mingo County, joined in informally by the county court and numerous other persons more or less interested, and after a full hearing upon the evidence of both parties, the Public Service Commission, finding from the evidence certain facts, ordered that the defendant, Norfolk & Western Railway Company, "do, within thirty days from the date hereof, construct, and thereafter maintain, a reasonably safe and suitable roadway across its tracks at or near the point where said crossing was formerly used by the complainant, as aforesaid; to be not less than eight feet wide, and to be so constructed and maintained as to render the same reasonably safe for the use of vehicles crossing said tracks; subject to the following terms and conditions:   (a) the use of said crossing shall be limited to the transportation of goods and merchandise consigned to the complainant and other shippers, and carried by the defendant, as aforesaid; (b) the entrance to said crossing on the north side of said tracks of the defendant railway company shall be closed by a gate, to be constructed and maintained by the complainant, and by him kept closed and locked, except when said crossing is being used for the purposes aforesaid; and (c) while said crossing is being used by the

91 W. Va.

complainant, as aforesaid, for the transportation of goods across said track, by the use of vehicles, the complainant shall employ a watchman for lookout for the purpose of giving notice of approaching trains, so as to lessen the hazard incident to the use of said crossing for the purposes aforesaid.''

A summary of the facts found by the commission, briefly stated, is as follows: (1) that Followay is, and for the past ten years has been, a merchant at Blackberry City, a small village about a mile east of Matewan, on defendant's railway, and opposite McCarr Siding, whose gross sales average from $4,500.00 to $5,000.00 per month; that his merchandise is, and for ten years or more, has been, shipped and delivered to him at McCarr Siding, in car load and less than car load lots, mostly on the south side of the railway, opposite plaintiff's store located on the north side of the railway, and which he is obliged to transport across the three tracks of defendant at that point, a distance of about two hundred feet; that the freights paid defendant by him aggregate about $300.00 per month: (2) that notwithstanding the custom and practice so maintained by the defendant of delivering goods to plaintiff, and notwithstanding the fact that said McCarr Siding is a minor station where some of its trains stop to receive and discharge passengers, and to deliver goods to plaintiff and others, and that he has been allowed for all these years to cross over its tracks at that point with his horses and wagons in hauling his goods from the place of deposit to his store house on the opposite side of the railroad, defendant has within the last twelve months planted heavy posts on its right of way so as to prevent plaintiff from hauling his goods over its tracks, and requiring him at great expense to carry them by hand: (3) that said McCarr Siding is located on a curve near a deep cut, whereby the view of the crossing by the enginemen operating trains is obstructed except for the distance of about 300 feet on each side of the crossing, because of which the defendant objects to the establishment or continuance of the crossing at that point.

In addition to the facts so found by the commission and established by the evidence, the evidence shows that McCarr Siding is the junction point of the branch line of defendant's

railroad to the Alma Thacker Fuel Company's mines and of the Allburn Coal Corporation's side-track, and at or near the opening of a bridge across Tug River, dividing West Virginia from Kentucky, built in 1905 by the Allburn Coal Corporation operating on the Kentucky side, with an upper deck to carry coal cars to its tipple located near the crossing, and a lower deck for wagons and foot passengers, and which, though a private bridge, the coal company for many years has permitted the public to use in crossing from one state to the other, and forming with the crossing and passages on each side a way to the public roads in both states, and which was frequently used by the public, especially in times of high water when the river could not be forded, in handling goods and other merchandise, though the ways at either end of the bridge were not public, but used by the public in getting to the county roads; that there were from twenty-five to forty houses in Blackberry City, and a hundred or more people resided there; that goods were delivered there to the coal companies and to one or two merchants besides plaintiff; and that passengers were received and discharged at that point by defendant in numbers ranging from ten to thirty every day.

The first proposition relied on by defendant's counsel is that the Public Service Commission, being a creature of the statute, was wholly without jurisdiction to make the order complained of. The statute prescribing the duties of public utilities is section 4, chapter 15-O, Barnes' Code 1918, as follows:

"Every person, firm or corporation engaged in a public service business in this state shall establish and maintain adequate and suitable facilities, safety appliances and other suitable devices, and shall perform such service in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employees, and in all respects just and fair, and without any unjust discrimination or preference. * * * Every railroad and other transportation company may be required by the commission to establish and maintain such suitable public service facilities and conveniences as may be reasonable and just. * * * *No steam railroad shall discontinue* any regular passenger train, or *other public service facility,* or change any regular passenger train schedule or any time table, without

first obtaining authority from the commission so to
do.''

Section 5 of the same chapter, prescribing the general
powers of the Public Service Commission, so far as applicable
to this case, is as follows:

> ''The commission is hereby given power to investi-
> gate all methods and practices of public service cor-
> porations or other persons subject to the provisions of
> this act; to require them to conform to the laws of this
> state and *to all rules, regulations and orders of the
> commission not contrary to law.* * * * The com-
> mission may compel obedience to its lawful orders by
> proceedings of mandamus or injunction or other proper
> proceedings in the name of the state in any circuit
> court having jurisdiction of the parties or of the sub-
> ject matter, or the supreme court of appeals direct, and
> such proceedings shall have priority over all pending
> cases.    The commission may change any intra-state
> rate, charge or toll which is unjust or unreasonable and
> may prescribe such rate, fare, charge or toll as would
> be just and reasonable, *and change or prohibit any
> practice, device or method of service in order to pre-
> vent undue discrimination or favoritism as between
> persons, localities or classes of freight.*''

And as to the rights of the petitioner and the public in
general, section 11 of said chapter provides:

> ''Any person, firm, association of persons, public
> officer, public or private corporation, municipality or
> county, complaining of anything done or omitted to be
> done by any public service corporation subject to the
> provisions of this act, in contravention of the provisions
> thereof, or any duty owing by it, under the provisions
> of this act may present to the commission a petition
> which shall succintly state all the facts; whereupon a
> statement of the charges thus made shall be forwarded
> by the commission to said public service corporation
> which shall be called upon to satisfy such complaint
> or to answer the same in writing within a reasonable
> time to be specified by the commission.    * * *    If
> such public service corporation shall not satisfy the
> complainant within the time specified, or there shall
> appear to be any reasonable ground to investigate the
> 91 W. Va.

> complaint, it shall be the duty of the commission to in-
> vestigate the same in such manner and by such means
> as it shall deem proper.''

It would seem from these provisions of the statute that the
commission had ample power and authority to pass and en-
force the order in question here, and that the rights of the
plaintiff to invoke the aid of the commission in the premises
is complete, unless the contention of counsel for the railway
company be well founded, namely; (1) that the crossing
ordered is not a suitable facility, or carrier facility, con-
templated by the statute; or (2) that the order, having the
force of a statute, (a) contravenes the provisions of sections
9 and 10, article 3 of the Constitution of this State, or (b)
the fifth and fourteenth amendments of the Federal Consti-
tution, or (c) that it is unconstitutional because unreasonable
in requiring the building and maintenance of a dangerous
grade crossing.

It will be observed that the commission, by a specific pro-
vision of the statute, may require a railway company *"to es-
tablish and maintain such suitable public facilities and con-
veniences as may be reasonable and just."* Is the crossing
ordered comprehended within the facilities or conveniences
described?    That a crossing or convenience of some kind,
originating many years ago in a farm crossing, has been main-
tained at McCarr Siding for many years, is shown by the evi-
dence; and that the railway company has really undertaken
to destroy or practically discontinue that crossing, such as it
was, without the authority of the Public Service Commission,
is admitted.    If the particular crossing originated in a farm
crossing, which section 14, chapter 42 of the Code, required
the railway company to build and maintain when constructing
its railroad some twenty-five years ago, it may well be doubted
whether it could now discontinue it to the detriment and in-
convenience of the petitioner; but this question is not neces-
sarily involved, and is not decided.    The question before us
is, is the crossing ordered the kind of a facility which may be
exacted at the hands of the railway company?    May not a
facility agreed to and continued for so many years for the
accommodation of shippers be regarded as reasonable, and

the continuance thereof justified? We think so, upon the principle laid down in *State ex rel.* v. *White Oak Railway Co.,* 65 W. Va. 15. As we held in *C. & O. Ry. Co.* v. *Public Service Commission,* 75 W. Va. 100, with reference to the duties prescribed by section 8 of said chapter, the commission has authority under the act to require railroads to provide adequate facilities for the transportation of persons and property on both main and lateral lines.

But it is contended that the crossing required by the order is not such an ''adequate or suitable facility'' or such a ''carrier facility'' as the law does or can exact of a railway company. In support of this proposition only two cases are cited and relied on. The first is *Great Northern Ry. Co.* v. *Minnesota,* 238 U. S. 340. This case turned on the fact that the stockyard scales which the railway company was required to provide did not directly pertain to any business between carrier and shipper, but were for the mere convenience of shippers in weighing their stock for their own information. For this reason, as well as for the reason that the order of. the railroad commission did not give the railroad company an opportunity to abate any existing discrimination between the particular station and other points where similar scales had been maintained, the judgment below was reversed.

The other case, that of *Missouri Pacific Railway Co.* v. *Nebraska,* 217 U. S. 196, was mandamus by a grain elevator company to compel the railway company to build at its own expense a side-track over its right of way to the grain elevator of the relator for its special use and convenience regardless of other elevator facilities provided for handling grain at the same point, and without a preliminary hearing, and under penalty of a heavy fine for refusal, as provided by a later statute. The conclusion of the court was that the statute was unconstitutional in its application to the case at hand, because it did not provide indemnity for what it required; but the court reserved the question whether by amendment such statute might not be rendered valid by providing for preliminary hearing and compensation.

The order in question here was made after full hearing, which relieves it from one of the fatal objections in the Nebraska case. The question of compensation depends on

other considerations. In the recent case of *B. & O. R. R. Co.* v. *Public Service Commission,* 90 W. Va. 1, 110 S. E. 475, we decided that where an application had been made by a shipper to the Public Service Commission for a side-track, and the railroad company had been served with notice and had had a full hearing, it could not complain of want of notice and an opportunity to be heard; and furthermore that the findings of fact by the Public Service Commission, necessarily based upon evidence, would not be disturbed upon appeal to this court.

In the case of *Atchison, Topeka and Santa Fe Railway Co.* v. *State of Oklahoma,* 21 L. R. A. (N. S.) 908, the question was whether the corporation commission had authority to order the institution of and maintenance by the railway company of a telephone in its station house at a certain station where there was but one telephone exchange, for the convenience of the people of another town about six miles away with about three hundred inhabitants, and who received all of their freight by way of that station; and it was held to be such a facility as the commission might reasonably require.

The subject of the expense of installing and maintaining a carrier facility, if it be one which is within the carrier's absolute duties, while one to be considered, is not of controlling importance; but if not falling within the range of absolute duties, the expense becomes a question of more controlling influence. *Oregon Railroad & Navigation Co.* v. *Fairchild,* 224 U. S. 510, 528-9, and cases cited. In promulgating the order involved here the commission necessarily took into consideration the fact that a facility substantially like the one demanded had existed at the same point for years, and that it related to the business being transacted daily between petitioner and others and the railway company; that the petitioner was required to perform quite burdensome duties and incur considerable expenses in connection therewith; and that the expense to the railroad company, about $150.00, was small in view of the volume of business done with petitioner and others at McCarr Siding.

We have been referred by counsel for petitioner to a number of decisions reported in the Public Utility Reports, in support of his views as to the lawfulness of the order now under

consideration. One of these is *Wadsworth* v. *Erie Railroad Company*, P. U. R., 1915C, 402, in which the New York commission affirmed its jurisdiction to. compel a railroad company to maintain and keep in repair an overhead bridge and ap- proaches, which constituted an established farm crossing, this upon the ground that the statute required railroad companies to build and maintain proper farm crossings. Another case is *Re Clarence Telephone Company*, P. U. R. 1920E, 363, in which the Missouri Public Service Commission held that reasonably adequate service, considering· the circumstances of each individual case, should be the first requirement of the commission, since · service is the only thing the utility can give its patrons for the rates paid. This case involved the question whether the rates charged were reasonable considering the inferior service theretofore rendered and the proposed im- provements by the telephone company. A third case is that of *Meyers* v. *Chicago, M. & St. P. Ry. Co.*, P. U. R. 1916F, 778, in which the South Dakota Board of Railroad Commis- sioners decided that under a statute giving them authority to require any common carrier to install ''any facility neces- sary for the safety, convenience and accommodation of the public,'' they had jurisdiction to require a railroad company to build a platform for loading and unloading heavy ma- chinery at a particular station, notwithstanding the alterna- tive proposition of the railroad company to build skids adapted only for unloading automobiles. Another case is *Dwyer* v. *Chicago & Northwestern Ry. Co.*, P. U. R. 1919D, 448, in which the supreme court of South Dakota held that an order of the railway commission requiring a railway com- pany to construct crossings, cattle guards and fences upon the request of the owner of lands on both sides of the railway was not an arbitrary and unreasonable exercise of its power, and was calculated rather to decrease than increase the danger and hazard of the traveling public and the persons operating the trains. In another case, *Northeast Kansas Tele- phone Company* v. *Hiawatha . Mutual Telephone Company*, P. U. R. 1915A, 1016, the Kansas Public Utilities Commission held that no established service ''or practice pertaining to the service'' of a public utility could be varied, modified or dis-

continued without the consent of the commission.  Such in effect and substance is the provision of our statute.

Lastly to be considered is the question of the constitutionality of the order complained of.  Does the order deprive the railway company of its property without due process, or of the equal protection of the law?  Certainly it does not if the service required by the order is reasonably within the absolute duties of the carrier, or unless it amounts to an arbitrary or unreasonable exercise of the powers of the commission.  In *United Fuel Gas Co.* v. *Public Service Commission*, 73 W. Va. 571, we decided that the process of the Public Service Commission, with right to be heard before it and to have its orders reviewed here as to all matters involved, satisfied all the requirements of due process and other constitutional rights; and also that the orders of the commission were to be regarded as final unless beyond the power which the commission could constitutionally exercise, or beyond its statutory power, or based upon a mistake of law.  And it was so held also in effect by the Supreme Court of the United States, in *Oregon Railroad and Navigation Company* v. *Fairchild, supra,* and in *Minnesota and St. Louis Railroad Company* v. *Minnesota,* 193 U. S. 53.  And a similar holding will be found in *Atlantic Coast Line* v. *North Carolina Corporation Commission,* 206 U. S. 1.

Our conclusion is to affirm the order of the Public Service Commission.

*Petition dismissed.*