BENWOOD-MCMECHEN WATER COMPANY *v.* CITY OF WHEELING

(No. 8867)

Submitted May 10, 1939. Decided June 20, 1939.

*Jay T. McCamic, Russell B. Goodwin* and *Benjamin L. Rosenbloom,* for petitioner City.

*Frank C. Dunbar,* for respondent Water Company.

Fox, President:

The City of Wheeling, a municipal corporation, owns and operates a water plant. The Benwood-McMechen Water Company, a private corporation, owns and operates a water plant in Benwood and McMechen. The City of Benwood adjoins Wheeling on the south and borders on McMechen. The parties will hereafter be referred to as the "city" and "Water Company".

In the year 1927, complaint was made by citizens of Benwood and McMechen, before the public service commission, that the water service of the Water Company had become unsatisfactory, and on September 7, 1927, the commission directed the Water Company "to undertake to procure from the City of Wheeling a supply of healthful water and serve the same to its customers". Following this order, the Water Company did apply to the city for water service, and a temporary agreement was entered into on September 24, 1927, under which water was furnished to the Water Company until October, 1928, at which time it formally applied to the city for water service, upon a form then used by the city for customers desiring such service, and the acceptance of this application in connection with the original agreement has been treated as a contract under which the city was to furnish water to the Water Company "at the published rates", of the city water department. Water was so furnished at a point within the city under the terms of the latter agreement. It appears that the city, under its charter, and under Section 1, Article 12, Chapter 8 of the Code, also furnished water to persons and corporations located outside its limits, and for this service made an additional charge of twenty-five per cent over that imposed upon customers within the city. The Water Company paid the intra city rates, but about 1930, the City demanded the payment of the extra charge for outside customers, and instituted its

suit in 1933 to recover therefor. This court, in *City of Wheeling* v. *Benwood-McMechen Water Company,* 115 W. Va. 353, 176 S. E. 234, refused to allow such recovery. Following the decision in that case, the city continued to bill the Water Company at what it termed the outside or higher rate, and in March, 1938, the Water Company filed its complaint against such billing, before the public service commission, praying that an order be made, commanding the city to cease and desist from its claim which, it was contended, was contrary to the holding of this court in the case cited above. To this complaint, the city filed its answer and cross petition, in which it attempted, in effect, to reopen the controversy as to the applicable rate to be charged for service under the existing contract, asserting that there was due it a large sum of money, and praying that an order be made requiring the Water Company to pay said sum. The city also asserted that "it is entirely optional with the City of Wheeling whether it shall continue to furnish water or not"; that it desired to discontinue service under said contract, and prayed that it be permitted to cease, upon a day to be named by the commission, from further supplying water to the Water Company, and upon this and other pleadings filed, a hearing was had.

On September 28, 1938, the public service commission entered an order requiring the city to cease and desist from its practice of billing the Water Company at the higher rate, and also denying the city's request for authority to discontinue the furnishing of water to the Water Company. In the statement of reasons for the entry of said order by the commission, filed herein on January 16, 1939, the following appears:

> "If it is necessary, and we believe it is, for the defendant to obtain authority from this commission before discontinuing service to the complainant, it should have supported its request for such authority with competent evidence, which it failed to do. Nowhere in the record that we are in duty bound to consider in this proceeding

can there be found any evidence to support a finding that it would be in the public interest for the defendant to discontinue service to the complainant. To do so would not be in the interest of the defendant's other customers, particularly those located within its corporate limits, for the reason that it has been clearly shown, we think, that the complainant is not only a profitable customer, but that the profit, based on the estimates of its principal witness, as shown by the records in the cases which have been made a part of the record in this proceeding by reference, amounts to over $5,000.00 annually. This amount, if the service should be discontinued, would be lost to the city and would have to be made up by its other customers if its revenue proved to be insufficient. * * * The commission's findings are not adjudications, and findings by it are not *res adjudicata*. Its findings are predicated on the evidence adduced as to the conditions prevailing at the time the matters involved are presented and are intended to be effective for a reasonable time in the future and until it is shown by competent evidence that the conditions have changed. * * * The way was left open for the defendant to renew its application to discontinue the service at any time that conditions might justify such action on its part. Since the defendant offered no evidence to support its request for authority from this commission to discontinue service to the complainant, it follows that its request for such authority should be denied, unless the defendant is correct in its contention that the only authority the commission has in this matter is to fix the date at which the service may be discontinued."

The city asked for an appeal from and suspension of the order of September 28, 1939, and this court, on February 21, 1939, granted the review and appeal prayed for "in so far only as the said commission held that the City of Wheeling did not have the right to terminate the existing contract between the said City and the complainant, Benwood-McMechen Water Company, for the furnishing of water by the said city to the said company, under the conditions set up in the record * * * ."

It will be apparent that the sole question here involved is whether or not the city may terminate the contractual relation between it and the Water Company, and discontinue the service heretofore provided thereunder, upon reasonable notice of its intention to do so. It is conceded that such service may not be discontinued, nor the contract terminated, except upon reasonable notice; but it is contended that the contract aforesaid, being for an indefinite period, can be terminated by either party thereto upon reasonable notice, and without any showing of cause for such action.

Obviously the service was rendered under the contract existing between the two utilities. It was a contract which, with the consent of the public service commission, they had the right to make, but it was confined to the two utilities and did not extend to the public served by each. Pond on Public Utilities (4th Ed.), sec. 244, p. 553; *Central Wisconsin Power Co.* v. *Wisconsin Traction, Light, Heat & Power Company,* 190 Wis. 557, 209 N. W. 755. As to the contract between them, they acted in the same capacity as if the business in which they were engaged was not affected by a public interest, and were governed by the same rules of law; and in entering into such contract they did not make the public parties thereto.

It will be conceded, we think, that each utility had a preferential right within the territory which, under its charter or franchise, it undertook to serve. Whatever right either utility had to serve the public outside of its zone of service, if it voluntarily chose to do so, is limited to the extent that neither could encroach upon the territory covered by the charter or franchise of the other. The city, under its charter, and the Water Company, under its franchise, having undertaken to furnish water within a particular territory, were under obligation to serve customers within that territory; but inasmuch as neither could encroach upon the territory of the other, neither could call upon the other to perform, in whole or in part, any of the services which it had undertaken to provide.

Therefore, in September, 1927, when, under the prompting of the public service commission, the Water Company entered into an agreement with the city for water service, the company had no right, within itself, nor did the public service commission have the right, to require the city to perform a service which the Water Company had undertaken. As stated above, under the circumstances, it was a contract into which the two utilities had the right to enter, but the right to service depended entirely upon the contract, and the contract being for an indefinite period, the right to terminate the same upon reasonable notice existed as to both parties thereto. *United Fuel Gas Co.* v. *Public Service Commission,* 105 W. Va. 603, 144 S. E. 723; *Wheeling* v. *Benwood-McMechen Water Co.,* 115 W. Va. 353, 176 S. E. 234; *City of Milwaukee* v. *City of West Allis,* 217 Wis. 614, 258 N. W. 851, 259 N. W. 724; *Childs* v. *City of Columbia,* 87 S. C. 566, 70 S. E. 296, 34 L. R. A. (N. S.) 542; *Risley* v. *Utica,* 179 Fed. 875; Pond on Public Utilities, (4th Ed.), sec. 201, page 476.

The public service commission, under the broad powers given it by the legislature, has the right to pass upon the question of whether or not a public utility may enter into a given contract, because of the effect such contract may have upon the power of the utility to carry out its purposes; but when a contract is once entered into, its construction and interpretation, and the rights growing out of the same, including the right to terminate, are to be determined by the courts. "Power to pass on validity of a private contract or to enforce its provision is intrusted exclusively to the courts." *Norfolk & Western Railway Co.* v. *Commonwealth,* 143 Va. 106, 129 S. E. 324. See also, *May Department Store* v. *Electric Co.,* 341 Mo. 299, 107 S. W. (2d) 41.

We do not understand it to be directly contended that the public service commission had the power, in 1927, to require the city to furnish water to the Water Company. Such contention, if made, would run contrary to a long line of cases which restrict the right of commissions authorized to regulate utilities to require the extension of

services beyond the zone undertaken to be served in the franchise or charter. *United Fuel Gas Co.* v. *Public Service Commission, supra; Oklahoma Natural Gas Co.* v. *Corporation Commission,* 88 Okla. 51, 211 Pac. 401, 31 A. L. R. 330; Pond on Public Utilities (4th Ed.), sec. 277, p. 592; *Atchison, Topeka & Santa Fe R. Co.* v. *Railroad Commission,* 173 Cal. 577, 160 Pac. 828, 2 A. L. R. 975; *Greenwood* v. *Provine,* 143 Miss. 42, 108 So. 284, 45 A. L. R. 824; *Interstate Commerce Commission* v. *Oregon etc.,* 288 U. S. 14, 53 Sup. Ct. 266, 77 L. Ed. 588. If it did not then have the power to require such service, the contract between the utilities did not, in our opinion, serve to endow the commission with any additional powers. Should the contract be legally terminated by either of the parties, the situation would become exactly the same as that existing immediately before it was first entered into.

Notwithstanding the holding of this court in *City of Wheeling* v. *Benwood-McMechen Water Company, supra,* the tacit admission of the commission at the hearing, and the failure of the Water Company in its brief to deny the right to terminate the contract, we interpret the commission's order and the reasons assigned therefor as an assertion of its power to determine the conditions under which the contract may be terminated and the service thereunder discontinued. It is conceded by the city that the public service commission may fix the time when such service may be discontinued, but this concession, as we understand it, is made without surrendering the position that it has the right to terminate the contract without showing any cause therefor. If the public service commission may require a showing of cause for the termination of the contract and the cessation of service, then it has the right to pass upon the reasonableness of the grounds for such termination, and may refuse to permit the contract to be terminated and the service to cease until such cause is shown to its satisfaction. Conceivably, the city may never be able to convince the public service commission that the service should be discontinued, in which event it would, in effect, be assuming power to

force a continuance thereof indefinitely. We do not think the commission has this power, as its exercise would, in effect, make a new contract between the parties, something which neither the commission nor this court has the right to do. The fact that such a contract might prove profitable is beside the point, for the property of one utility may not be appropriated for the benefit of another, with or without compensation. *United Fuel Gas Co.* v. *Public Service Commission,* 103 W. Va. 306, 138 S. E. 388, 52 A. L. R. 1104.

But the city, having entered into this agreement, and the public being involved, particularly in the cities of Benwood and McMechen, may not abruptly terminate the same and discontinue the services thereunder. Under all the circumstances, a reasonable time should be given to enable the Water Company to so adjust its affairs as to give to the public within the cities of Benwood and Mc-Mechen the service to which, under the Water Company's franchise, they are entitled. What is a reasonable time, under the circumstances of the case, is a matter which the public service commission may properly determine, but we think that in doing so it will reach the limit of its power in the premises.

We are unable to discern the distinction between termination of the contract and the discontinuance of service thereunder. As we have indicated, the service which the city has been giving to the Water Company may only be demanded under the contract, and if that be terminated, then the question of whether or not the city shall continue such service is one of election on its part, unless the public service commission has the power to require one utility to furnish service to another, and we have already stated that we do not think it possesses such power. If such power were conceded to it, then the property of one utility might at any time, under an order of the commission, be diverted to the performance of the service of another, and, sometimes, competing, utility. The property of a municipal water plant is private property within the provisions of the constitution, which provide

against the taking of such property without due process of law. *Shirk* v. *Lancaster*, 313 Pa. 158, 169 Atl. 557, 90 A. L. R. 688; *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 12 S. Ct. 142, 35 L. Ed. 943; *Wagner* v. *Rock Island*, 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519; *City of Logansport* v. *Public Service Commission*, 202 Ind. 523, 177 N. E. 249, 76 A. L. R. 838.

The order of the public service commission, in so far as it denied to the city the right to terminate the agreement existing between it and the Water Company and discontinue the service thereunder, upon the record presented to it, is reversed, and this proceeding is remanded to the public service commission for the purpose of fixing the date when such termination and cessation of service may become effective.

*Reversed and remanded.*