STATE *ex rel.* PUBLIC SERVICE COMMISSION

v.

SOUTHERN WEST VIRGINIA OIL & GAS CORPORATION AND THE STAR GAS COMPANY

(No. 10788)

Submitted December 9, 1955.     Decided March 6, 1956.

LOVINS AND RILEY, JUDGES, *dissenting.*

*John G. Fox*, Attorney General, *Robert E. Magnuson*, Assistant Attorney General, for relator.

*Thomas S. Moore, M. J. Ferguson, Ben K. Baer, Charles C. Wise, Jr.*, for respondents.

BROWNING, PRESIDENT:

Relator, the Public Service Commission of West Virginia, seeks a writ of mandamus directing the defendants, Southern West Virginia Oil & Gas Corporation, hereinafter referred to as Southern, and the Star Gas Company, hereinafter referred to as Star, to comply with an order of the Commission, dated October 6, 1955, which order, after requiring the Wayne Gas Company to construct a 4″ gas line from its distribution system to a point near Wells Nos. 23 & 24 of Southern, stated: "It is further ordered that the Southern West Virginia Oil & Gas Corporation be, and it hereby is, required to connect its production system and said gas line at the above described point or points near Wells Nos. 23 and/or 24, and set meters at said connection in order to deliver gas to meet the requirements of the Wayne Gas Company, and further to furnish said Wayne Gas Company with its gas requirements, all to be done within ten days after the aforesaid notice of completion of construction is received from the Wayne Gas Company."

The allegations of the petition are substantially as follows: Southern, until 1939, was the sole owner of partially developed leaseholds aggregating some 8,000 acres, and produced natural gas therefrom, some of which was sold to the United Fuel Gas Company, and some of which it supplied to customers in and about the Town of Wayne, West Virginia, through its own distribution system.

In 1939, the Wayne Gas Company was formed, and Wayne and Southern jointly applied to the Commission for its approval of a transfer of Southern's distribution system to Wayne. The Commission, by order of June 30, 1939, refused to approve such transfer. A rehearing was sought and granted, and, upon representations by the parties that a contract would be consummated whereby the rights of Wayne to receive gas from Southern would be made superior to all other demands on Southern, the Commission, by order of July 27, 1939,

gave its consent and approval to the transfer, the order reading in part: "* * * The Commission in giving its consent and approval to said sale and purchase does not pass upon nor approve the terms and conditions thereof, except in so far as the agreement proposed to be entered into between the petitioners, filed herewith as Exhibit No. 3, obligates the Southern West Virginia Oil and Gas Corporation to deliver to The Wayne Gas Company a sufficient supply of natural gas to meet the requirements of the Wayne Gas Company; * * *; [Southern], in accordance with Exhibit No. 3 herein, agrees that its obligation to furnish gas to said The Wayne Gas Company shall be superior to all other obligations * * *."

After the rehearing, but prior to the formal order of July 27, 1939, Southern conveyed its distribution system to Wayne by deed dated July 18, 1939, and by deed, dated July 24, 1939, conveyed an undivided two-thirds of its holdings to the Mullins Gas Company, and also by an instrument, dated July 24, 1939, constituted the Mullins Gas Company as agent of Southern with full power of management over Southern's remaining one-third interest. By mesne transactions, the respondent Star, in 1947, succeeded to the proprietary rights of Mullins and its authority as agent of Southern.

In November, 1953, Wayne filed a complaint with the Commission against Southern and Star, and the Commission found on October 25, 1954, that the supply of gas to Wayne had been insufficient to meet its requirements, but that Wayne's facilities were also inadequate, and ordered all parties to formulate plans to correct the situation. Star sought an appeal from this order which was refused by this Court on February 14, 1955. Subsequently, the Commission's order of October 6, 1955, was entered. The petition then alleges the failure of respondents to comply with its order, after proper notice, and prays for a peremptory writ of mandamus.

This Court granted a rule to show cause why the writ should not issue as prayed for on December 2, 1955, re-

turnable December 9, 1955. The respondent, Southern, answered stating that the petition affirmatively shows that since 1947 Star has owned a 2/3 undivided interest in the leasehold, and, under the law of mining partnerships, exercises full control, therefore, to award the writ as to Southern would be to order Southern to do and perform acts which are wholly beyond its power and authority.

The respondent Star demurred on the grounds that: The order of October 6, 1955, was directed to Southern and not to Star, or its successor the Lynn Gas Company, and is, therefore, void as to Star, or its successor; the Commission is without jurisdiction to make or enforce an order against Star which is not a public utility or in anywise engaged in a public service; and, the petition fails to show a clear legal right to relief against Star. Star then, though relying upon its demurrer, answered, averring that: The transfer from Southern to Mullins was proper and legal, was a matter over which the Commission could have no jurisdiction, and that jurisdiction could not be acquired by consent, acquiesence or agreement; the conditions in the order of July 29, 1939, can in no event be binding upon Star as such conditions were in excess of the jurisdiction of the Commission, and particularly in view of the fact that Star was a bona fide purchaser for value without notice of such conditions; Star, on November 1, 1954, sold its interests in the leasehold to Lynn Gas Company, who, in turn, is a bona fide purchaser for value without notice; sufficient gas is produced from the leasehold to supply the requirements of Wayne, and such gas has been supplied even though Wayne has been in default in paying for such gas and continues to be in default; and, subsequent to Lynn's serving notice upon Wayne that service would be discontinued by reason of such default, Wayne obtained a temporary restraining order against Southern, Star and Lynn, which suit is now pending, and, therefore, any action by this Court in the instant proceeding would be premature.

Relator demurred to the separate answers of Star and Southern. The parties, considering that there was no material question of fact in dispute, presented the matter upon the pleadings, with the exception of a stipulation by which the evidence taken before the Public Service Commission in Cases Nos. 2684 and 4013 was made a part of the record in this proceeding.

The relator relies upon the provisions of Chapter 24, Article 2, Section 12 of the Code, as amended, for authority to approve or disapprove the transfer by Southern of its public utility franchise and properties to Wayne and Lynn, and to impose the condition contained therein. That section provides for such consent and states that: "* * * if the public will be convenienced thereby, enter such order as it may deem proper and as the circumstances may require, attaching thereto such conditions as it may deem proper, consent to the entering into or doing of the things herein provided, without approving the terms and conditions thereof, and thereupon it shall be lawful to do the things provided for in such order."

The agreement of July 18, 1939, between Southern and Wayne contained all of the conditions required by relator's order, but, among certain additional provisions, provided: "* * * Should said The Wayne Gas Company fail to pay any proper bill rendered for gas delivered under this contract within ten (10) days after the tenth day of the month following that in which the gas was delivered, then, in that event, the said Southern West Virginia Oil & Gas Corporation, shall have the right to declare this contract forfeited, at its option and cease to deliver gas hereunder." The relator contends that, notwithstanding the fact that Southern became, subsequent to the 1939 order, a non-public utility, and has since continued in that status, by virtue of the conditions attached by its order, the property of Southern at the time of the transfer to Wayne became devoted to public service, and, thereafter, Southern, Mullins, Star

and Lynn are bound thereby regardless of their non-public utility status, and any agreement or agreements that may have been entered into between them. All of those parties except Southern contend that they are not bound by the order, inasmuch as they were purchasers for value without notice of the order, and have never been subject to the jurisdiction of the Public Service Commission.

In *Benwood-McMechen Water Company* v. *City of Wheeling,* 121 W. Va. 373, 4 S. E. 2d. 300, both litigants being public utilities, this Court said: "The public service commission, under the broad powers given it by the legislature, has the right to pass upon the question of whether or not a public utility may enter into a given contract, because of the effect such contract may have upon the power of the utility to carry out its purposes; but when a contract is once entered into, its construction and interpretation, and the rights growing out of the same, including the right to terminate, are to be determined by the courts. * * *"

In its report and order of October 25, 1954, in Case No. 4013, the Commission stated that: "It is not the purpose of this report and the order hereinafter made to compel obedience by Southern and Star to the Commission's order of July 27, 1939, in Case No. 2684, as this should and will be done by the institution of a proper proceeding in another forum, * * * ." In resisting the appeal by Star from that order to this Court, the relator contended that: "Star was not required by the order to do any affirmative act in the sale and delivery of gas, either at the price of 15¢ for each one thousand cubic feet or at any other price. It was not ordered to furnish gas to Wayne in any quantity, at any time or in any manner. It was not ordered to change its status in any particular or to act to its prejudice or detriment. * * *" As heretofore stated, the order of October 6, 1955, was directed only to Southern.

Star incorporated in its answer a letter signed by

both Star and Lynn, dated November 30, 1955, addressed to the Chairman of the Commission, stating that: "By conveyance dated November 1, 1954, Lynn Gas Company became successor to the properties owned by Star Gas Company in Union and Stonewall Districts, Wayne County, West Virginia. For this reason, Star Gas Company is no longer concerned with said properties." The letter further states that Lynn Gas Company had no objection to the setting of the meter as directed by the relator's order of October 6, 1955, as long as the installation therefor was paid for by Southern or the Wayne Gas Company; the Lynn Gas Company would set the meter if the Wayne Gas Company delivered to it a certified check in the amount of $500.00; if the litigation pending in the Circuit Court of Wayne County was decided against Lynn that the $500.00 would be returned to the Wayne Gas Company, and, if Lynn prevailed, "then so much of said amount as is actually expended for installing said meter will be retained by Lynn Gas Company, and any balance promptly refunded to The Wayne Gas Company."

The litigation referred to arose by virtue of a notice dated on or about the 19th day of September, 1955, by the Lynn Gas Company to Wayne, that services would be discontinued on the 31st day of October, 1955, because of default by Wayne in the payment to Lynn of bills theretofore rendered. Star's answer said: "Defendant further says that Wayne Gas Company defaulted in the payment to defendant for gas furnished to Wayne for the months of December, 1954, April, May, June, July, August and September, 1955, and also for gas sold to Wayne through field meters for the months of January, February, March, April, May, June, July, August, September and October, 1955, * * *." The answer further states that Wayne's indebtedness "for gas for said period of time amounted to more than Eighty Five Hundred Dollars ($8500.00) and, in addition, Wayne is indebted to this defendant for other sums evidenced by a judgment of the Circuit Court of Wayne

County, West Virginia, and a note of the Wayne Gas Company, which Wayne has refused and neglected to pay * * *."

Subsequent to the receipt of notice of cancellation of the contract, Wayne brought its suit in the Circuit Court of Wayne County, West Virginia, against Southern, Star and Lynn, and a temporary restraining order was issued by that court against the defendants prohibiting them from discontinuing the service of gas to Wayne. Star and Lynn moved that court to dissolve the temporary restraining order, and that suit is pending at that stage of proceedings. There is also pending in the Circuit Court of Wayne County, a declaratory judgment proceeding in which all of the parties to this proceeding are parties relative to some of the issues arising out of this controversy. The answer of Star further states that regardless of the litigation pending in the Circuit Court of Wayne County, and, even though the temporary injunction should be dissolved, it and Lynn will continue to supply Wayne with its gas requirements, through existing facilities, until final adjudication of the respective rights of the parties.

The relator, the Public Service Commission, is authorized by statute, Code, 24-2-2, as amended, to enforce its orders in a proper case by mandamus. To warrant this Court in granting this writ, facts must be presented showing that the relator has a clear legal right to the performance of the thing demanded, and that a corresponding duty rests upon the respondents to perform that particular duty. *Meador* v. *County Court of McDowell County*, 141 W. Va. 96, 87 S. E. 2d. 725; *Adams* v. *Londeree*, 139 W. Va. 748, 83 S. E. 2d. 127; *State ex rel. Dunn, et al.* v. *Griffith*, 139 W. Va. 894, 82 S. E. 2d. 300; *State ex rel. Emery, et al.* v. *Rodgers*, 138 W. Va. 562, 76 S. E. 2d. 690; *State ex rel. Trent* v. *Amick, et al.*, 137 W. Va. 842, 74 S. E. 2d. 587. The particular duty here demanded of the respondents is the setting of the meter and laying of certain lines so that gas produced from wells in a certain area of Wayne County may be put into

a 4″ gas line, heretofore laid by the Wayne Gas Company.

This Court holds that, upon the record before it, a clear legal right has not been shown for the issuance of the writ. The denial of such writ is in no wise prejudicial to the suit in equity, or the declaratory judgment proceeding, pending in the Circuit Court of Wayne County. In view of such pending litigation in the Circuit Court of Wayne County, however, we refrain from a further discussion of the issues presented herein.

*Writ denied.*

Lovins, Judge, *dissenting*:

I dissent from the conclusion reached by a majority of the Court and the reasons given therefor, and would award the writ of mandamus.

I agree that a relator in a proceeding in mandamus must establish a clear legal right to the relief sought, but I think that the majority opinion of the Court has either overlooked or not considered the fact that the relief sought in this case pertains to the consumers of gas in Wayne, West Virginia, and involves a question of public policy.

The public policy of this state relative to public utilities is well fixed and defined by statute. The provisions of Chapter 24, Code, 1931, the various articles and sections of which have been amended from time to time, define the public policy of this state relative to the regulation of public utilities. Such utilities are given certain privileges not enjoyed by other individuals and corporate business concerns, such as the right of eminent domain, a limited monopoly and a guarantee of a reasonable return on their investment, among others, and in return they are restricted in the use and disposition of their property to a reasonable and justifiable extent necessary to serve the public. It may be observed, the state, through the Public Service Commission, regulates the rates and practices of public utilities so as to afford

reasonable and justifiable protection to the members of the public served by public utilities. It should be borne in mind that the rights and powers given the Public Service Commission to enforce its orders are derived from the rights of the public.

I would distinguish this proceeding to enforce public rights of gas consumers served by the Wayne Gas Company from the ordinary common law mandamus proceeding. The Public Service Commission is given power to " * * * change or prohibit any practice, *devise* [device] or method of service * * * " and make an order showing such prohibition. [Emphasis supplied]. Section 2, Chapter 115, Acts of the Legislature, 1935, Regular Session.

Adverting to the mandamus authorized by Code, 3-5-41, in election matters, this Court has held that the writ of mandamus as authorized by that section is broadened and liberalized in the scope given such writ by common law. *Daugherty* v. *County Court*, 127 W. Va. 35, 31 S. E. 2d 321. By a parity of reasoning, I think that by Chapter 115, Article 2, Section 2, Acts of the Legislature, 1935, Regular Session, the writ of mandamus is broadened to a certain extent and should be treated to effectuate and carry out the legislative intent.

Southern West Virginia Oil & Gas Corporation could not legally deprive itself or impair its power to perform its duty to the public as a public utility gas company. When it disposed of its gas leases and wells to the Mullins Gas Company and invested that Company with the power of management, thus impairing the services theretofore rendered to the public consumers of gas, it was contrary to public policy of this state to make a contract of that character. "Corporations which are endowed by government with special powers and privileges are charged with certain duties and obligations to the public, and, in violation of public policy, cannot bind themselves by contract to do that which would disable them from performing those duties and obligations,

or compel them to subordinate such duties and obligations to their private interests." *Lone Star Gas Co.* v. *Municipal Gas Co.,* 117 Tex. 331, 3 S. W. 2d 790, 58 A. L. R. 797, (1928).

The contract between the Southern West Virginia Oil & Gas Corporation and the Mullins, Star, and Lynn Gas Companies is void as being contrary to the public policy of this state. *Lone Star Gas Co.* v. *Municipal Gas Co., supra.*

I think this Court, in view of that principle, should have treated the Southern West Virginia Oil & Gas Corporation as still being the owner of sufficient gas leases and wells to supply the consumers in the town of Wayne with gas, though the Public Service Commission permitted, by the order of 1939 the so called separation contract.

As to the general rule with respect to public service corporations, see 58 A. L. R. 804 *et seq.,* Annotation, entitled: "Validity of contract which impairs or tends to impair the ability of a public service corporation to serve the public". Two headnotes to the case of *Gibbs* v. *Consolidated Gas Co. of Baltimore,* 130 U. S. 396, 9 S. Ct. 553, 32 L. Ed. 979 reads as follows:

> "Courts decline to enforce contracts which impose a restraint, though only partial, upon business of such character, that restraint to any extent will be prejudical to the public interest.
>
> * * *
>
> A corporation cannot disable itself by contract from the performance of public duties which it has undertaken, and thereby make public accommodation or convenience subservient to its private interests."

Although in this jurisdiction I have been unable to find any case directly in point to the case here presented, *Gas Co.* v. *Lowe and Butler,* 52 W. Va. 662, 44 S. E. 410, indicates that it was the duty of either the Wayne or

the Southern West Virginia Oil & Gas Company to furnish gas to the inhabitants of Wayne, West Virginia. Wayne Gas Company could not do so unless it obtained its supply of gas from the Southern West Virginia Oil & Gas Company. See *Gas Co.* v. *Gas Co.*, 58 W. Va. 22, 50 S. E. 877; *Carnegie Nat. Gas Co.* v. *Swiger*, 72 W. Va. 557, 79 S. E. 3. In the body of the opinion in the *Swiger* case, the Court's opinion uses this language:

> "Are not the rights of the public so fixed sufficiently definite to answer the requirements of the law? We think so. The rights of the people are thus protected in nearly every case where the public is served by the public service corporations, furnishing water, gas, electricity or transportation."

The Public Service Commission of this State had the power to require the Wayne Gas Company, the Southern West Virginia Oil & Gas Corporation to conform their conduct and policies to the laws of this state and to the rules and regulations of the commission not contrary to the law. *Railway* v. *Pub. Serv. Com.*, 91 W. Va. 414, 113 S. E. 247. The Wayne Gas Company being organized to the end, and without power of obtaining its supply of natural gas other than from the Southern West Virginia Oil & Gas Corporation, could not lawfully be deprived of such supply. *Refining Co.* v. *Coal Co.*, 92 W. Va. 479, 115 S. E. 431; *Lone Star Gas Co.* v. *Municipal Gas Co., supra; Gibbs* v. *Consolidated Gas Co. of Baltimore, supra.* It is adverted to in the Court's opinion that the Wayne Gas Company owes considerable money to the Southern West Virginia Oil & Gas Corporation and its successive managers, Mullins, Star or Lynn Gas Companies. That fact is beside the point when you consider the rights of the public as to utility corporations. Either the Mullins, Star or Lynn has the right to resort to courts for the collection of such debt and the fact of such indebtedness should not prejudice the rights of the public to the production and distribution of gas for consumption by its members.

It is my thought, and the authorities seem to bear out this conclusion, that once property is charged with a public service, necessary for and devoted to a public use, this public requirement follows such property regardless of its transfer to persons not engaged in the public service. The gist of that conclusion is that the leasehold and wells of the Southern West Virginia Oil & Gas Corporation at the time of the sale to the Mullins Gas Company were burdened by the public necessity of furnishing gas for the purpose of distribution in the town of Wayne.

The contention by the Star Gas Company that it is a purchaser for value and without notice is without merit.

The existence of indebtedness of Wayne Gas Company or the fact the Star or Lynn Gas Company, its successor, is not a public utility, although the managers and two-third owners of the property, impressed with a public obligation, could not allow them to take it free and discharged of that obligation contrary to public policy.

I think the Public Service Commission has shown a clear legal right to the enforcement of its order for the furnishing of natural gas adequate and sufficient to serve the town of Wayne and would therefore award the writ prayed for.

I am authorized to say that Judge Riley joins in this dissent.