GILLESPIE, Presiding Justice:
A suit was filed in the Chancery Court of DeSoto County by DeSoto Natural Gas District (hereinafter District) and the Towns of Hernando and Coldwater which organized and own District, against Missis *286 sippi Valley Gas Company (hereinafter Company) for the enforcement of certain provisions of a lease between District and Company’s predecessor in title of a gas transmission and distribution system in DeSoto and Tate counties. From a decree granting several of the prayers for relief, Company appealed to this Court.
District sought and was granted a decree adjudging, among other matters not here at issue, that the recently developed, unincorporated community of Southaven is within the area covered by the lease; that District has the right upon termination of the lease to purchase from Company all extensions, additions and betterments made or which may be hereafter made within said Southaven area in accordance with the terms of the lease; mandatorily enjoining Company to include in the budget of proposed annual expenditures the cost of any extensions, additions or betterments in the Southaven area, and to furnish certain budgets to District as required by Paragraph Ten of the lease; and awarding District a money decree of $5,000 for attorneys’ fee.
District was organized pursuant to resolutions adopted by the governing bodies of Hernando and Coldwater and House Bill 1073, Laws of 1950. This act created District as a political subdivision of the state and authorized it to construct and install a natural gas transmission and distribution system and gave District the powers conferred by Chapter 317, Laws of 1934 to municipalities, which included the power to own, operate and maintain such a system. Chapter 317, Laws of 1934, Section 2(c). Certain other enabling acts were passed by the legislature with reference to the issuance of bonds and the validation of the organization of District.
On August 16, 1950, District entered into a lease with Company’s predecessor for a term of twenty-five years wherein District would forthwith construct a transmission system and distribution system for the distribution of natural gas in those certain municipalities within said District shown upon a map attached as Exhibit “A”. District agreed to so construct the systems “designed and safe to operate and of sufficient capacity to adequately serve with natural gas the communities upon said Exhibit A.” Exhibit A to the lease is a map which is three sections in width east and west and twenty-two sections north and south. Within the area shown thereon are designated the incorporated Towns of Hernando and Coldwater and the unincorporated communities of Horn Lake and Nesbitt. The lease further provided for a rental which was sufficient to retire certain bonds authorized to be issued by District. Paragraph Nine provided that additions, extensions and betterments may be made to the system to the extent agreed upon by District and Company and that for those made by Company at its own expense District will pay on the termination of the lease to Company the cost thereof after reasonable depreciation with interest computed at four percent per annum with title to remain in Company until payment is received from District. The District constructed the systems and turned them over to Company for operation pursuant to the terms of the lease.
Until 1956 the distribution of natural gas was not regulated by the State of Mississippi. Enacted that year was the Public Utility Act under which Company applied to the Public Service Commission for a certificate of public convenience and necessity as required by Section 5(b) (grandfather clause) and attached thereto was a copy of the lease which included the map attached as Exhibit A. The petition of Company stated that it was engaged in “the construction or operation of such equipment and facilities * * * located in the areas shown on the maps of said counties attached hereto and made a part hereof by reference.” With specific reference to the DeSoto Natural Gas District operation, the petition stated that “a map showing the area served by petitioner in this District is attached to said lease.”
The natural gas supply was obtained from Texas Gas Transmission Company’s *287 pipeline which runs in an east-west direction across the northern portion of the area shown on the aforementioned map and about a mile south of the Mississippi-Tennessee line. Company operated under the terms of the lease, supplied gas to the communities within the area shown on the map, and generally complied with the provisions of the lease until 1966. Between 1960 and 1966 additions were made to the system by Company which obtained from the Mississippi Public Service Commission several extensions to the area originally served under the lease, all except two of which were with District’s consent and knowledge. These were extensions of the original service area and included the area now known as Southaven which began to develop about 1960. Before then there was not more than one gas customer served by the company in the Southaven area although part of what is the now large and expanding Southaven area was shown on the map attached to the lease. Southaven now has more gas customers than all the remainder of the area served by Company under the lease with District. By the end of 1966, the Company had spent $252,983.-64 for additions and extensions to serve 1,571 customers in the Southaven area. About the time Company ceased requesting the District’s consent to extensions and additions in the Southaven area of the system, it also discontinued including in its budget of anticipated expenditures the cost of extensions in the Southaven area.
The central issue presented in this case is whether the extensions made by Company in the Southaven area are subject to the terms and provisions of the lease. To support its contention that the Southaven area is a separate operation owned by it and not subject to the lease, Company asserts that it leased property and not an area and that the map attached to the lease was merely a “frame for a picture.”
In all of its applications for extensions in the Southaven area Company stated that the service areas were extensions of the prior certificate area under Docket U-43, the original docket number of Company’s “grandfather” certificate issued as aforesaid. At the outset of operations under the lease Company made necessary arrangements to secure a supply of natural gas from a tap on the pipeline of Texas Gas Transmission Company. After the development of the Southaven area the company installed facilities for the separate metering of the gas used in serving the Southaven area from that of the remainder of the area served. For a number of years after 1959 District and Company negotiated with reference to a proposed bond issue to remunerate Company for additions and extensions made to the system. Company sought an extension of the term of the lease for a longer period of time before obligating itself to the rental necessary for District to receive in order to retire the bonds. These negotiations failed to produce an agreement.
In our opinion there is no merit in the contention that the Southaven area is a separate operation and not subject to the lease. The lease stated that District would construct and install a system adequate to serve “ * * * the communities upon said Exhibit A.” This reference was to the attached map which included the then undeveloped Southaven area. Every act of Company until 1966 was in accordance with, pursuant to, and in recognition of the lease with District. It was only upon failure of the negotiations regarding the issuance of the bonds by District and the extension of the term of the lease that Company took the position that the Southaven area was a separate operation and not subj ect to the lease.
It is next maintained by Company that the matter in controversy is within the exclusive jurisdiction of the Public Service Commission. Not involving the issuance of a certificate of public convenience and necessity, this suit pertains to the interpretation of the lease and the rights of the parties thereunder. Jurisdiction to adjudicate the rights of the parties to this contract is in the courts, not the Public Service Commission. Benwood-McMechen *288 Water Co. v. City of Wheeling, 121 W.Va. 373, 4 S.E.2d 300 (1939).
Company further contends that the court should not have specifically enforced the contract. We are of the opinion that the furnishing of the budget of intended extensions and additions is vital to full performance of the contract. District- is entitled to such information in connection with its obligation and right to purchase the extensions and additions upon termination of the lease. Damages would not provide an adequate remedy. The termination of the lease requires from its very nature extensive preparations a considerable time in advance. The adjudication of District’s rights in the lease cannot await the termination date without the risk of confusion and irreparable loss.
We are of the opinion that the chancellor correctly decided the issues and ably set forth the rights of the parties in his opinion and decree.
The motion for attorneys’ fees is sustained and appellee is allowed one-half the sum allowed for services in the trial court.
Affirmed.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.