432 P.2d 478

**Marion R. McCARTY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and National Mechanical Contractors, Inc., Respondents.**

**No. 1 CA–IC 149.**

Court of Appeals of Arizona.

Oct. 16, 1967.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Arthur B. Parsons, Jr., Phoenix, for respondents.

CAMERON, Chief Judge.

This is a writ of certiorari to review a finding and award of the Industrial Commission of Arizona.

We are called upon to determine whether the finding of the Industrial Commission that the petitioner's injury should be compensated as a scheduled rather than an unscheduled disability is reasonably supported by the evidence.

Petitioner was using a cutting torch to burn holes in a steel form when a piece of slag or molten steel, tar, and concrete flew back and rolled into his ear burning a hole in petitioner's eardrum. On 16 February 1962 the Industrial Commission issued its findings and award for scheduled permanent disability finding that said injury caused a permanent partial disability equal to a 12% loss of hearing of the right ear. On 14 May 1963 petitioner filed an application for readjustment or reopening of the claim. After a finding and award denying reopening, petitioner employed counsel. The award was protested and application for rehearing filed. A hearing

was held 5 May 1964 at which time V. A. Dunham, Jr., M.D., testified as follows:

"Q Was there an indication then from this process that there was actually fluid in the ear?

"A Although I could not see fluid in the ear by looking at the eardrum, we know that fluid may be present, and there is a distinct sound that one hears during catheterization. I did not mention it previously, but at the time of the catheterization we used what is known as a Toynbee tube; this is a rubber tube with a device on each end which fits into the ear canal. One is placed in the patient's ear that is being catheterized, and the other is in the doctor's ear. He listens to the sound of the air as it passes through the eustachian tube into the ear. If fluid is present, it is detectable. The sound made is difficult to describe unless you listen to it yourself. It has a squeaking quality which is not present when you catheterize the eustachian tube where the air is free of fluid.

"Q Doctor, you mentioned Mr. McCarty had mentioned pulsation in the ear and ringing. Was there anything that you observed or found that accounted for this allegation of pulsation and ringing in the ears?

"A Ringing in the ear and pulsation in the ear both may accompany the condition of fluid in the ear, yes.

"Q Were your findings compatible with the complaint by the applicant of such pulsations and ringing?

"A Yes, they were.

"Q Doctor, would this condition such as you found have any effect upon a man's balance, his sense of balance in walking in high places?

"A Yes. Dizziness may also accompany the condition of fluid in the ear, and also there is usually hearing loss. On occasion there may be pain.

"Q Doctor, from what you were told of the mechanism of this injury and your actual findings, would you have an opinion as to whether there was a possibility whether or not the original injury was the cause, direct or indirect, of this condition you found?

"A Well, it was my feeling, after checking the patient, that although the primary condition was that of an allergy and subsequent eustachian tube blocking and fluid in the ear, that based on the history and my physical findings, it was my feeling that the fact that the right ear was involved with these symptoms and the left ear remained relatively free of these symptoms that the original injury had to play a contributing part in the persistence of symptoms on that side.

\* \* \* \* \* \*

"A In reaching my opinion of Mr. McCarty, I stated previously that I felt that from the allergic rhinitis pressent (sic) and the fluid in the ear resulting from the swelling in the nose from the allergic rhinitis, that it was my feeling that this condition caused a symptomatology in the right ear as opposed to no symptoms in the left side. It would have to be correlative with the history, it would have to be attributable to the injury, because in correlating this with the physical findings and history, his symptomatology had been related to the right ear, which had been the injured ear, and in the allergic rhinitis the entire nasal membrane is involved, so we must assume that it would be just as likely to block up the left eustachian tube as the right. With the findings being in the ear that had been involved, we must assume then that with the persistence of symptoms following the injury that it had to contribute to his symptoms."

On 27 August 1964 the Commission issued its decision upon rehearing, and on additional findings and award for scheduled permanent disability they found that the petitioner suffered a permanent partial disability equal to a 17% loss of hearing in the right ear as opposed to the 12% previously found. Petitioner filed a new petition for rehearing claiming that the findings were not based upon evidence, and that there was a failure to find a general disability because of dizziness and loss of balance. The hearing was held 6 January 1965. The petitioner testified and the following transpired:

"Q Now at the last hearing you referred in your testimony to working in high places, and the Hearing Officer at the last hearing in a report to the Commission indicated that he was not sure whether you were referring to working at high altitudes or just what you did mean. Now, what do you mean by not wanting to work in high places?

"A I mean up on the scaffolds where the footing isn't sure because of the danger of falling, not high altitudes like Flagstaff· or some place like that, not where there is solid ground.

\* \* \* \* \* \*

"Q You feel that you would not be able to work in heights?

"A In high places I would definitely not want to work, it would depend on how hungry my children were; if they were hungry enough I would be desperate enough to try it even though I would risk my life and limb.

\* \* \* \* \* \*

"Q Do I understand your problem of working at heights is because of the dizziness?

"A Yes, the wooziness, the dizziness, not because of the hearing."

The Referee's Report recommended that the petitioner's claim be denied and stated:

"Headaches or dizziness and tiredness are not additional injuries within the meaning of the Workmen's Compensation Act so as to qualify this as an unscheduled disability. They are merely symptoms,—not injuries."

On 9 March 1965 the Commission issued its decision upon rehearing affirming the previous decision and award. The matter was then brought to this Court by writ of certiorari, and on 18 November 1965 by stipulation was remanded back to the Industrial Commission for further action. After consultation, a hearing was held 6 October 1966. Dr. Maresca testified:

"Q Doctor, then as I take it, there is nothing in your tests that actually rules out the possibility of a tinnitus, the pulsing?

"A No, there is nothing. No, sir, there is no way.

\* \* \* \* \* \*

"Q I realize the difficulty, Doctor, of evaluating what effect it would have on a man's occupation, but if you were to assume that this man in his ordinary occupation would have been called upon and was called upon to do welding work 300 to 700 feet in the air at Page on the Glen Canyon Dam, and 200 to 300 feet in the tunnel at the Tucson Missile base, and if the facts would show that this man allegedly refused to do those jobs because of fear engendered by lack of balance, would you say that it was then unreasonable or inherently incompatible with a man's refusal to do such jobs?

\* \* \* \* \* \*

"A Well, just as I didn't feel that I could answer the same kind of question for Counsel, I really don't feel competent to answer this question when put this way. I would almost have to try getting up there myself. It is almost not a medical thing as far as the reasonableness or unreasonableness or refusal to per-

form a job when you feel you can't do it. This is outside of medical province. This is common sense. If a patient doesn't feel he can walk on one flight of stairs, then it would be reasonable for him not to do so, if he felt he could be endangering himself or others, but I would have to adopt the same position on this question that I did when it was asked before. * * *"

On 28 December 1966 the Commission issued its decision upon the hearing affirming the previous finding and award for scheduled permanent disability, finding:

"There is no medical evidence substantiating appellant's allegation of disability, other than the permanent partial disability to his right ear."

On 22 March 1967 a decision upon the hearing and order affirming previous findings and award was entered, and petitioner brings this writ of certiorari.

 The question before this Court is whether the finding by the Commission that the petitioner suffers, as a result of the industrial injury, no disability other than the 17% loss of hearing in the right ear is reasonably supported by the evidence. We think that the finding by the Commission is not reasonably supported by the evidence. After reading the record before this Court we can come to no other conclusion than that the petitioner suffers disabilities in addition to the 17% loss of hearing. Dizziness and ringing in the ears certainly constitute a very real disability to a person engaged in construction work in high places. In the instant case were there no injury other than the loss of hearing, the petitioner would be entitled to compensation only under § 23–1044, subsec. B [21] A.R.S. which reads as follows:

"For the partial loss of * * * hearing, fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of * * * hearing, which the partial loss of use thereof bears to the total loss of * * * hearing."

Our Supreme Court has held that where a workman sustains multiple injuries which have not healed, the Commission must treat the injuries as under the "odd lot" or non-scheduled category. Scott v. Industrial Commission, 80 Ariz. 280, 296 P.2d 954 (1956). With the additional injury resulting in the dizziness and impairment of balance, the petitioner is entitled to receive compensation under subsection C of 23–1044 A.R.S. which provides for unscheduled disabilities.

Award set aside.

DONOFRIO and STEVENS, JJ., concur.