493 P.2d 1209

Antonio TORRES, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Floyd Hartshorn Plastering Company, Inc.,
Respondent Employer,

Liberty Mutual Insurance Company,
Respondent Carrier.

No. 1 CA–IC 643.

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 23, 1972.

W. Mercer Bouldin, Tucson, for peti-
tioner.

William C. Wahl, Jr., Chief Counsel,
The Industrial Commission of Arizona,
Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westov-
er, Killingsworth & Beshears, by Ralph E.
Mahowald, Jr., Phoenix, for respondent
Employer and Carrier.

JACOBSON, Judge.

This appeal by writ of certiorari calls
into question whether petitioner's industrial

injury should be treated in the scheduled or unscheduled [1] category.

On June 24, 1969, petitioner suffered an industrial accident as a result of being sprayed in the eyes with lime. A Notice of Permanent Disability was entered by the carrier on June 29, 1970, finding petitioner was entitled to be compensated for a 50 percent loss of vision for one eye as provided by A.R.S. § 23–1044, subsec. B, pars. 17 and 21 (a scheduled injury). A request for a hearing was timely filed and set for December 7, 1970, but was cancelled and reset for December 28, 1970, in order to obtain the testimony of Dr. Frank D. Morrison. Prior to the hearing of December 28, 1970, the parties entered into a stipulation of facts which, together with matters and information already in the hearing officer's file, were submitted to the hearing officer for his consideration in reaching his determination in this matter. The formal hearing was then dispensed with. A portion of this stipulation which summarized Dr. Morrison's testimony was as follows:

"1. The left eye:

"(a) Severe opacification of the left cornea, secondary to scarring due to lime burns;

"(b) 40 percent loss of visual acuity;

"(c) 50 percent loss of visual fields;

"(d) severe loss of sensitivity and inability of the eye to tear properly; that this loss of sensitivity has resulted in episodes wherein foreign bodies have gotten into the right eye, as more fully set forth in the report of July 31, 1970 resulting in an infection and further disability; that the lack of tearing in the left eye is a further complication of the eye's inability to overcome particles being in the eye due to the loss of sensitivity, especially in a dry area like Arizona;

"(e) that the chronic condition of loss of sensitivity and lack of proper tearing in the left eye is now stationary and will continue permanently.

"2. The right eye:

"(a) No loss of visual acuity or visual fields;

"(b) scarring or pannus at nasal limbus—localized—secondary to lime burns;

"(c) severe loss of sensitivity and inability of the eye to tear properly; that this loss of sensitivity has resulted in episodes wherein foreign bodies have gotten into the right eye, as more fully set forth in the report of July 31, 1970, resulting in an infection and further disability; that the lack of tearing in the left (right) eye is a further complication of the eye's inability to overcome particles being in the eye due to the loss of sensitivity, especially in a dry area like Arizona;

"(d) that the chronic condition of loss of sensitivity and lack of proper tearing in the left (right) eye is now stationary and will continue permanently."

Based upon this stipulation, the hearing officer found petitioner suffered a 50 percent loss of vision of the left eye and was entitled to be compensated on the basis of a scheduled injury. Following the submission and denial of a motion to reconsider, which had attached to it an affidavit of Dr. Morrison, petitioner filed a request for review by the Commission, which affirmed the decision of the hearing officer. Petitioner has sought review in this court by way of certiorari.

Petitioner's contention both before the Commission and this court is based upon the proposition that petitioner has suffered more than a loss of vision—he has suffered, in the words of his counsel, a "more

---

1. "Scheduled injuries" refer to those injuries compensated under A.R.S. § 23–1044, subsec. B; "unscheduled injuries" refer to those injuries compensated under A.R.S. § 23–1044, subsec. C.

substantial injury which interferes with the vision and accompanying mechanism of both eyes and their adjacent structure; namely, the scarring, the interference with the tearing, and the loss of sensitivity." Thus, petitioner contends, under the authority of McCarty v. Industrial Commission, 6 Ariz.App. 334, 432 P.2d 478 (1967), he has suffered more than a loss of vision and is entitled to have his injuries treated as unscheduled.

We believe petitioner's reliance upon the reasoning in McCarty is justified. In McCarty, the injured workman suffered a loss of hearing and in addition his injury caused fluid to collect behind his ear which affected his sense of equilibrium and caused dizziness. McCarty thus suffered from two distinct injuries—loss of hearing and loss of equilibrium. Under these circumstances, the McCarty court held that these multiple injuries should be compensated as unscheduled disabilities.

However, rather than base our opinion in this matter upon strictly a multiple injury concept, we feel a determination of where petitioner's injuries fall within the applicable statutory structure is more in order. A.R.S. § 23–1044, subsec. C provides:

"In cases not enumerated in Subsection B of this section [enumerating scheduled injuries] where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation [based upon loss of earning capacity]."

The first determination by this court is whether in fact petitioner's injuries fall within the enumerated injuries of A.R.S. § 23–1044, subsec. B. The applicable portions of this subsection provide:

"(16). For the loss of *an* eye by enucleation, thirty months.

"(17). For the permanent and complete loss of *one* eye without enucleation, twenty-five months.

\* \* \* \* \* \*

"(21). For the partial loss . . . of sight . . . fifty percent of the

average monthly wage during that proportion of the number of months in the foregoing schedule provided for the . . . complete loss of sight . . . which the partial loss of use thereof bears to the . . . total loss of sight. . . ." (Emphasis added.)

These sections must also be read in connection with A.R.S. § 23–1045, subsec. C which provides:

"In the absence of proof to the contrary, disability shall be deemed total and permanent if caused by:

"(1) The total and permanent loss of sight of *both* eyes." (Emphasis added.)

A.R.S. § 23–1044 deals with unscheduled injuries, that is, compensation based upon loss of earning capacity.

■ A.R.S. § 23–1044, subsec. B, pars. 16, 17, and 21, by their express terms, deal with injuries which result in loss of sight to *one* eye only. This is clear when read with A.R.S. § 23–1045, which is the only statute which deals with injuries to *both* eyes, although admittedly this statute deals with total blindness. It would therefore appear to the court that if petitioner had suffered a partial loss of sight in both eyes by his industrial injury, his compensation would have to be based upon loss of earnings (an unscheduled injury) as such injuries are not enumerated in subsection B of A.R.S. § 23–1044. This determination is not contrary to our holding in Chavez v. Industrial Commission, 13 Ariz.App. 89, 474 P.2d 448 (1970), as in Chavez we were dealing with a hearing loss in both ears, and a hearing loss in both ears is enumerated in A.R.S. § 23–1044, subsec. B, requiring that his injuries be treated as scheduled.

However, in this case, petitioner has suffered a loss of sight in his left eye only, and he has not, as yet, suffered any loss of sight in the right eye.

■ We thus must make our second determination in this matter—did the injury occurring to the right eye result in a "dis-

ability" within the meaning of A.R.S. § 23-1044, subsec. C. "Disability" as used in this section refers to a disability that results in a loss of earning capacity. *See,* Heidler v. Industrial Commission, 14 Ariz. App. 280, 482 P.2d 889 (1971); Sims v. Industrial Commission, 11 Ariz.App. 385, 464 P.2d 972 (1970).

 Disregarding the affidavit of Dr. Morrison attached to petitioner's motion to reconsider (we consider such an affidavit submitted after the close of evidence and not subject to cross-examination to be improper, *see,* Fudge v. Industrial Commission, 13 Ariz.App. 400, 477 P.2d 274 (1970)). Dr. Morrison, in letters to the insurance carrier, copies of which were contained in the Commission file and were to be considered by the hearing officer, stated:

"In addition, we feel that he should be re-trained due to his field loss and diminished vision in his left eye, and that he should not be allowed to return to work in the construction industry due to the inherent dangers. We feel that he might be recommended for vocational rehabilitation."

In amplifying on these "inherent dangers", Dr. Morrison, after removing foreign particles lodged in petitioner's right eye due to the lack of tearing and sensitivity, noted:

"It is felt that this patient is going to have to be followed very carefully and probably watched every ten days to two weeks for observation of possible foreign material in the *eyes,* this being due to the fact that he has loss of corneal sensation secondary to his on-the-job injury." (Emphasis added.)

The conclusion is inescapable that his injury to his eyes, aside from the loss of sight in his left eye, has rendered him incapable of pursuing his former occupation as a plasterer and thus has affected his earning capacity.

 The evidence discloses that petitioner has suffered more than an injury to *one* eye which has affected his sight;

he has suffered an injury to *both* eyes which has affected his earning capacity. Since injury to both eyes affecting earning capacity is not an enumerated injury under A.R.S. § 23-1044, subsec. B, his injuries must be compensated as unscheduled under the provisions of A.R.S. § 23-1044, subsec. C.

Since the award in this matter must be set aside, we need not reach the second contention urged by the petitioner dealing with the denial of his request for further hearings.

Award set aside.

HAIRE, P. J., and EUBANK, J., concur.