491 P.2d 1138

**Leona Mary HIGGINS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Harold F. Stewart and Amanda Stewart (Stewart & Son), Respondent Employer, State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 578.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 22, 1971.

Charles M. Wilmer, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, Robert K. Park, Chief Counsel, State Compensation Fund, by Ronald M. Meitz, Phoenix, for respondents State Compensation Fund and Harold F. Stewart and Amanda Stewart (Stewart & Son).

EUBANK, Judge.

This case is before the Court on our writ of certiorari to review the lawfulness of an award of The Industrial Commission. The petitioner contends that certain findings of the Commission are not supported by competent evidence.

The facts are that the petitioner, Leona M. Higgins, was injured on October 8, 1965, when she was knocked down and trampled by two milk cows in a walkway in respondent employer's milking barn. Her claim was originally denied, but after a formal hearing held on December 13, 1966, the Commission issued a findings and award for compensable claim on January 27, 1967. The claimant was provided with accident benefits and compensation for her injuries, which consisted of multiple contusion and laceration of the scalp, contusion of the right occipital region, back, left upper arm, right groin and left thigh. A medical consultation board convened on March 30, 1967, reported that it found her condition stationary, and that she could return to regular work.

The petitioner's attending physician, Dr. Robert D. Erickson, questioned the conclusion of the board, and continued to treat her. Subsequently, she was re-evaluated by a consultation board on May 16, 1967, which concluded that petitioner's condition was not stationary, and that she should continue under medical treatment.

She was seen again by a consultation board whose report is dated January 19, 1968, which concluded that her condition was still not stationary, and recommended, because of certain complaints made by the claimant at that time, that her care be transferred to a neurosurgeon for an intensive examination and possible hospital observation. On March 29, 1968, the applicant was sent to Raymond Huger, M. D., a psychiatrist, who diagnosed reactive depression. He treated petitioner for this condition, and the responsibility for the treatment was assumed by The Industrial Commission. On July 23, 1968, and August 5, 1968, Dr. Huger noted that the mental condition had not much improved. His last examination of the petitioner during the course of this treatment was October 10, 1968. his report of that examination concluded:

" . . . I feel if she can motivate herself to get going, we will see some changes, otherwise I feel she will remain chronically depressed."

Another medical consultation board was convened on November 4, 1968. William B. Haeussler, M. D., a psychiatrist, participated in this board. This board concluded as follows:

"COMMENTS:

"There is no psychiatric impairment related to the accident of October 8, 1965. Any psychiatric symptoms should disappear or markedly diminish once she returns to gainful employment.

"The injury to the left facial and acoustic nerves has virtually cleared and constitutes no impairment at this time other than the slight hearing loss. Otherwise the patient is intact neurologically with no evidence of brain stem impairment.

"It is felt that this patient's condition is stationary and no further medical treatment is indicated."

The claim was terminated by a findings and award for scheduled permanent disability issued Febraury 19, 1969, finding her condition stationary with no disability other than the scheduled injury to the left ear, and awarding a 25% loss of hearing to the left ear.

A hearing was held pursuant to a motion for rehearing, on February 4, 1970. At the hearing, Dr. Haeussler was called and testified as follows (referring to his exam-

ination of petitioner as a member of the November 4, 1968 consultation board):

"THE WITNESS: At the time again the depression seemed so minimal that I couldn't give any real specific psychiatric diagnosis or evidence of any psychiatric disability. And so in the absence of seeing any psychiatric disability as such, it assumed there was no psychiatric disability due to the injury, the accident." And Dr. Haeussler further testified:

"Q . . .

This was a clinical depression that you observed, or was it?

"A Well, I feel I observed what I felt to be the tail-end of a depressive neurosis, because I did not see, you know, much at all depression at the time. And I did have access to Dr. Huger's reports, and he had observed this and reported this.

"Q So this depression that you observed at the time that you saw her, in your opinion was this impairing any of her physical functions?

"A No, only in the fact that the depressed feelings always tend to—I am talking about feelings now, thoughts, just the clinical entity now. But the depressed feelings slow the person's actions down somewhat. And perhaps she moved about a little more slowly than someone else might have, something else like this."

Dr. Raymond A. Huger, M. D., also attended the hearing, and testified as follows:

"Q Was the precipitating factor in this case the industrial trauma in question?

"A The industrial trauma she had?

"Q The industrial trauma, yes.

"A I couldn't answer that specifically because I didn't really know her before. I had only seen her afterward. And I couldn't say whether this was what she was really like before. I think that she was very much this way before, but there was no accident or anything to kind of happen. Whether something else happened, whether it might be a hysterectomy or whether something else, that might have put her in a similar position, see."

Dr. Huger also testified:

"Q The Claimant stated that she feels as though she is not able in her mind to return to work. I believe in your answers you stated that she was in fact able to go back to work. In her own mind is this like a motivation to want to go back to work conscious or unconscious?

"A I think it is a conscious thing, that she feels in her own mind that she is too weak and she can't go back and couldn't capably do it. I think that she probably—if there were some catastrophe that would shake her up, she would probably get back to work, which I think probably would be the best thing for her. But how you can get her to do it, I don't know."

In addition, Dr. Huger testified that the claimant was angry and resentful concerning psychiatric treatment, possibly due to the fact that her mother had died in a state hospital, that she was unusually dependent on her husband who attempted to accompany her to the psychiatric interviews, that she consciously refused to take medicine which the psychiatrist prescribed, and that she was generally an uncooperative patient. Therefore, it was his opinion that further psychiatric treatment was of little value to the petitioner.

■■ Following the hearing, Dr. Huger, at the request of petitioner's counsel, submitted a further psychiatric evaluation dated March 10, 1970. While the counsel for the carrier did not specifically object to the admission of this report, which substantiated the position taken by the carrier, it is the opinion of the Court that evidence submitted after a formal hearing is not admissible. Harding v. Industrial Commission, 11 Ariz.App. 426, 464 P.2d 1013 (1970); McKnight v. Industrial Commission, 9 Ariz.App. 97, 449 P.2d 631 (1969);

and Morris v. Industrial Commission, 3 Ariz.App. 393, 414 P.2d 996 (1966). The reason for this is brought out by the second communication from Dr. Huger dated March 20, 1970, designated a "supplementary note to the consultation of Febraury 27, 1970" (as reported in the letter of March 10, 1970). The supplementary note reverses the medical conclusion which was stated in his first letter. The Arizona law, as cited above, correctly states that such transmissions are not admissible, except when presented in sufficient time to allow for cross-examination at the hearing.

It is the opinion of the Court that the award and findings of The Industrial Commission are reasonably supported by the evidence, and that the petitioner has failed to sustain her burden of proving that she is entitled to compensation over and above that which she was awarded.

The award is affirmed.

JACOBSON, P. J., and HAIRE, J., concur.