555 P.2d 350

**GENERAL CABLE CORPORATION, a New Jersey Corporation, Appellant and Cross-appellee,**

v.

**CITIZENS UTILITIES COMPANY, a Delaware Corporation, Appellee and Cross-appellant.**

**GENERAL CABLE CORPORATION, a New Jersey Corporation, Appellant,**

v.

**ARIZONA CORPORATION COMMISSION and Citizens Utilities Company, a Delaware Corporation, Appellees.**

**Nos. I CA–CIV 3061, I CA–CIV 3062.**

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 26, 1976.

Rehearing Denied Sept. 28, 1976.

Petition for Review Denied Oct. 19, 1976.

---

Lewis & Roca by John P. Frank, Thomas C. Horne, Walter Cheifetz, Phoenix, for appellant and cross-appellee.

Evans, Kitchel & Jenckes, PC, by Earl H. Carroll, Stephen W. Pogson, Lex J. Smith, Phoenix, for appellee and cross-appellant.

Bruce E. Babbitt, Atty. Gen., by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for appellee State Corp. Commission.

## OPINION

OGG, Judge.

The cases of 1 CA–CIV 3061, Mohave County Superior Court No. C–9279 and 1 CA–CIV 3062, Maricopa County Superior Court No. C–279134 were consolidated in this appeal.

Both appeals involve the attempt of the appellant/plaintiff General Cable Corporation to free itself from the terms of an electrical supply contract entered into be-

tween General Cable and the appellee/defendant Citizens Utilities Company. Under the terms of this May, 1968 contract, General Cable agreed to pay for the minimum amounts of energy which it specified were necessary to supply the needs of a rod mill and a pulp plant it intended to build in Kingman, Arizona.

General Cable's anticipated needs for power would have increased Citizens' Kingman power loads by approximately 40%. At that point in time Citizens was unable to supply the anticipated needs without the construction of new facilities for delivery of power to General Cable. The negotiations were begun in 1966 and were closed when both parties signed a contract in May 1968. The contract was then submitted to the Arizona Corporation Commission for its approval, which was given.

Under the terms of the contract, Citizens agreed to furnish demand and energy minimums in accordance with General Cable's stated requirements. Citizens also agreed to construct the necessary facilities to serve the needs of General Cable. General Cable agreed to pay for minimum amounts of demand and energy which it specified were necessary for the operation of the proposed rod mill and pulp plant. In the industry this type of agreement is often referred to as an "availability contract" or a "take or pay contract."

At some point in 1968 General Cable decided not to proceed with its plans to construct a pulp plant. At this time construction of the new facilities to serve General Cable was proceeding and was completed in May, 1969. General Cable first advised Citizens that it was not going to build the pulp mill in December, 1969. Because of the cancellation of the pulp mill, General Cable has not utilized all of the demand and energy minimums it contracted to pay, while Citizens has been ready to provide all the electrical power as requested by General Cable in the contract.

This involved problem can be reduced to simple terms. General Cable contracted for utility services. The need for a large part of such service terminated with the cancellation of the construction of the pulp mill. Must General Cable now continue to pay over the twenty year term of the contract for electricity it will never use? General Cable estimates this cost of unused electricity over the life of the contract to amount to something between $4.5 to $9.5 million.

1 CA–CIV 3061 was tried before the court in Mohave County, where the judge held that General Cable was bound by the terms of its contract and was not entitled to any relief. In the same case Citizens also filed a counterclaim, alleging that certain billings to General Cable had been undercharged because of certain billing mistakes. The court entered judgment against Citizens on its counterclaim and directed that all parties pay their respective costs. General Cable appealed the judgment against it and Citizens cross-appealed from that portion of the judgment requiring each party to bear its own costs.

On appeal General Cable contends that the trial court erred when it refused to award damages and when it failed to declare the contract void as against public policy and illegal as in violation of the constitution and laws of this state. General Cable alleges that the rates charged under the contract are discriminatory and unreasonable in violation of Art. 15, § 12, of the Arizona Constitution and ARS § 40–361A. Both the Arizona Constitution and statutory law require that charges imposed for a utility service must be just and reasonable. General Cable argues that forcing payments under the terms of the contract results in General Cable paying excessive rates for the electricity it receives since it must pay for electricity that is never furnished nor used.

General Cable is in a class with other industrial customers for rate purposes and as a result of paying for electricity it does not use under the contract General Cable pays more than twice as much per kilowatt hour as the other industrial users.

General Cable cites cases that a utility company may not discriminate between customers who are similarly situated. *Town of Wickenburg v. Sabin*, 68 Ariz. 75, 200 P.2d 342 (1948); *Texas Power & Light Co. v. Doering Hotel Co.*, 147 S.W.2d 897 (Tex.Civ.App.1941); 4 *E. McQuillan Municipal Corporations* § 1829 (2nd ed. 1928).

We are in agreement with the principle of law that a utility company may not discriminate between customers who are similarly situated. However, in this case we do not believe General Cable was in a similar situation with the other industrial customers in the Kingman area. The fact that a special contract had to be entered into between the parties whereby Citizens would construct new facilities to meet the specific needs of General Cable is a clear indication that General Cable was not just an ordinary industrial customer. Here were special circumstances and the fact that the rates and contract minimums might be different as to one specific customer means that such customer is not similarly situated—not that there is discrimination. Availability contracts such as the one before us have been upheld by the courts. *Mobil Oil Corporation v. Tennessee Valley Authority*, 387 F.Supp. 498 (N. D.Ala.1974); *Oliver-Mercer Electric Cooperative Inc. v. Fisher*, 146 N.W.2d 346 (N.D.1966); *City of Memphis, Tennessee v. Ford Motor Co.*, 304 F.2d 845 (6th Cir. 1962).

The *City of Memphis, Tennessee v. Ford Motor Co.*, supra, presented a situation analogous to this case. Ford contracted with the city for electricity to be provided for Ford's assembly plant. The contract provided for minimum monthly payments to be made by Ford over the five year life of the contract. After two years of the contract period Ford sold the plant, removing the need for electricity. Ford sued to cancel the minimums due for the remainder of the contract period. The court upheld the terms of the availability contract and held that Ford was obligated to pay the minimum electricity bills, notwithstanding the fact that Ford was not using the electricity. Like Ford, General Cable obligated itself to pay for more electricity than it might use from time to time, in exchange for the utility agreeing to meet its specific electricity demands. Like Ford, General Cable, after the availability power contract had been entered into, made a business decision which resulted in a reduction of its power needs. Like Ford, General Cable sought to avoid payments of the minimum charges as called for in the contract and also, like Ford, General Cable was not permitted to do so.

We are in agreement with Judge Gordon's first conclusion of law, which reads:

1. The charges to General Cable by Citizens pursuant to the 1968 contract, including the minimum charges, are not, as a matter of law, unjust, unreasonable or discriminatory.

The cases upholding availability contracts cited above rely principally upon contract law and General Cable contends that they do not answer the contention that under the law of this state a utility cannot have rates that are unjust, unreasonable or discriminatory. The trial court, after thirteen days of trial, made specific findings of fact that would justify the conclusion of law that the rates under the contract were not unjust, unreasonable or discriminatory. We find there was sufficient evidence to justify the pertinent findings and conclusions of law.

General Cable also claims it was error for the trial court in Maricopa County to grant Citizens' motion for a change of venue from Maricopa County to Mohave County. The case of 1 CA–CIV 3061 was originally brought in Maricopa County and upon application of Citizens under the provisions of ARS § 12–401 it was transferred to Mohave County by order of Judge Charles L. Hardy. General Cable sought relief by special action from the order of transfer and this court declined jurisdiction, finding no abuse of discretion in

Judge Hardy's order of transfer. See 1 CA–CIV 2474.

No petition for review was filed in 1 CA–CIV 2474 and no additional special action contesting venue was filed with the Arizona Supreme Court. Under the circumstances of this case. the order of the superior court transferring venue, together with our order in the special action finding no abuse of discretion in change of venue, is the law of the case. The venue cannot now be challenged in this appeal after the case has been tried on the merits.

Citizens, on its cross-appeal, claims the court erred when it failed to award costs to Citizens and instead directed that each party was to bear its respective costs. Citizens argues that the provisions of ARS § 12–341 requires that "[t]he *successful* party to a civil action *shall* recover from its adversary all costs expended or incurred therein unless otherwise provided by law." *Trollope v. Koerner*, 21 Ariz.App. 43, 515 P.2d 340, 344 (1973).

Citizens argues that since General Cable was asking for greater relief in its complaint than Citizens was requesting in its counterclaim, it was in fact the prevailing party when the court denied relief to all parties.

Under the facts of this case, where a complaint seeks greater damages than the counterclaim and the trial court has denied relief to both parties, we find that neither party is the "successful party" under the provisions of § 12–341. The trial court was correct in directing each to bear its respective costs. See *Witt v. Realist, Inc.*, 18 Wis.2d 282, 118 N.W.2d 85 (1962); *Srybnik v. Epstein*, 230 F.2d 683 (2d Cir. 1956).

We next turn our attention to 1 CA–CIV 3062, Maricopa County, which was consolidated for the purposes of this appeal.

In June, 1972, General Cable filed a "complaint concerning excessive and discriminatory rates and petition for rehearing," with the Arizona Corporation Commission. Attached to the complaint was the May, 1968, contract between General Cable and Citizens. This complaint asked the Commission to enter an order declaring the rates charged by Citizens to General Cable under the terms of the contract to be unjust, unreasonable, and discriminatory. The complaint asked for reparations for overpayments of a reasonable rate and that the Commission fix a reasonable rate to cover future payments under the contract. In the alternative, General Cable asked the Commission to set aside its previous approval of the contract, declare the contract void and fix a new reasonable rate.

The Commission dismissed the complaint on the grounds it was "without jurisdiction to determine the legality of the subject contract." General Cable then appealed this decision to the Superior Court of Maricopa County pursuant to the authority of ARS § 40–254(A), asking the court to rescind the orders of the Commission and grant the relief requested from the Commission.

The case was considered by the trial court as a motion for judgment on the pleadings and the parties stipulated that "the sole issue to be decided by this Court is whether the Corporation Commission had jurisdiction to adjudicate the legality of the contract negotiated and executed by and between the plaintiff and the defendant-intervenor." The trial court affirmed the decision of the Corporation Commission and General Cable brought this appeal.

It is our opinion that the case of *Trico Electric Cooperative v. Ralston,* 67 Ariz. 358, 196 P.2d 470 (1948) is controlling in the case before us. In the *Trico* case the issue was whether an option contract between an electric cooperative was "unlawful, illegal and void," similar to General Cable's allegations herein. The cooperative contended that the trial court was attempting to usurp the jurisdiction of the Corporation Commission. The Arizona Supreme Court ruled it was the function

of the courts and not the Corporation Commission to determine the validity of the option agreement.

We agree with the trial court that the construction and interpretation to be given to legal rights under a contract reside solely with the courts and not with the Corporation Commission. *Trico,* supra; *Benwood-McMechen Water Co. v. City of Wheeling,* 121 W.Va. 373, 4 S.E.2d 300 (1939) ; *Mississippi Valley Gas Co. v. DeSoto Natural Gas District,* 235 So.2d 285 (Miss.1970) ; *Norfolk & Western Railway Co. v. Commonwealth,* 143 Va. 106, 129 S.E. 324 (1925).

Although we find the courts had exclusive jurisdiction to interpret the contract in this case, we do not reach any other question here relating to the jurisdiction of the Corporation Commission to consider rates affecting General Cable.

For the reasons stated herein, we affirm the decisions of the trial courts in both 1 CA–CIV 3061 and 1 CA–CIV 3062.

DONOFRIO, P. J., and FROEB, J., concur.