586 P.2d 987

**Madeline CAMPBELL, Appellant,**

v.

**MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY and American Telephone & Telegraph Company, Appellees.**

**No. 1 CA–CIV 3503.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 19, 1978.

Rehearing Denied Nov. 1, 1978.

Thur & Preston by Calvin C. Thur, Scottsdale, for appellant.

Fennemore, Craig, von Ammon & Udall by Michael Preston Green, George T. Cole, Phoenix, for appellees.

## OPINION

EUBANK, Judge.

### FACTS AND ISSUES

The primary question raised by this appeal is whether A.R.S. § 40–241 et seq., and § 40–321 et seq., or the doctrine of primary jurisdiction, require the appellant, Madeline Campbell, to assert her tort and breach of contract claims against appellees in a complaint to the Arizona Corporation Commission before suing on those claims in Superior Court. The trial court was of the opinion that such "prior resort" to the Commission was required and granted appellees' Motion to Dismiss, made pursuant to Rule

12, Rules of Civil Procedure, 16 A.R.S. Appellant appeals on the ground that her suit in Superior Court was proper without prior resort to the Commission. We agree and reverse the trial court's judgment of dismissal.

Our summary of the facts is taken from appellant's allegations in her complaint, for all such material allegations must be taken as true by a reviewing court testing the propriety of an order granting a motion to dismiss. *Hatch v. Double Circle Ranch*, 22 Ariz.App. 124, 125, 524 P.2d 958, 959 (1974).

Madeline Campbell, an invalid, operated several businesses out of one location in Phoenix for a period of several years. During that time, she requested, received, and paid for telephone service from the Mountain States Telephone & Telegraph Company, one of the appellees. Beginning in 1972, appellant learned from her customers, friends and employees that her phones at her place of business were not being answered at times when she was there, indicating that her phones did not ring to indicate incoming calls. Further, some calls to appellant's place of business were "intercepted" by Mountain States operators who falsely told the callers that appellant was out of business. To end these problems, appellant made numerous complaints to the phone company over several months, but both problems continued. In addition, as these problems continued in 1974, appellant, while making a call, heard background noises and asked if someone was on the line. A woman responded that she was an operator "monitoring" the call.

Appellant's complaint was in three counts, two in tort and one in contract. The first count apparently asserts two causes of action in tort. One is the appellees' intentional tort of refusing to give appellant unintercepted and uninterrupted phone service despite her repeated requests for such service, and the second is appellees' intentional infliction of emotional distress upon appellant. This latter cause of action is based on appellant's assertions that ap-

pellees were aware of her frail condition and susceptibility to upset and that they nevertheless proceeded to intercept and interrupt her phone service even though they knew or should have known that emotional distress to appellant would result. Appellant sought substantial compensatory damages for appellant's loss of income and business, aggravation, mental and physical suffering, inconvenience, distress, and aggravation of physical condition. Punitive damages were also sought for both alleged torts.

The second count seeks damages for breach of contract. Because appellees failed to deliver uninterrupted telephone service, they allegedly breached their contract with appellant, resulting in a loss of income and business by appellant.

The third count of the complaint asserts a cause of action for alleged tortious invasion of appellant's privacy. By "monitoring" and intercepting her phone calls and conversations, appellees allegedly intruded into her personal life in an outrageous manner. Appellant sought compensatory and punitive damages for the invasion of privacy.

The issue of whether or not appellant's allegations are sufficient to state a claim or claims is not before us. Thus, for purposes of this appeal, we will assume that the complaint does allege facts sufficient to state claims in tort and for breach of contract.[1]

On July 7, 1975, appellees moved to dismiss the complaint "on the ground that plaintiff has failed to exhaust administrative remedies and that this Court lacks jurisdiction." While appellees' motion considered the question one of exhaustion of remedies, it is clear from their discussion that there real argument was that exclusive primary jurisdiction was in the Corporation Commission. The differences between the two doctrines are discussed hereafter. Appellees' key proposition was that appellant's claims, though nominally sounding in contract and tort, really concerned the adequa-

---

1. These issues are discussed generally in *Olson v. Mountain States Telephone & Telegraph Co.*,

119 Ariz. 321, 580 P.2d 782 (Ct.App.1978), a case with facts similar to those of this case.

cy of appellees' services as public service corporations. Questions dealing with adequacy of service are, appellees contended, within the exclusive original jurisdiction of the Commission under A.R.S. § 40–321 et seq. Further, appellees asserted that by means of A.R.S. § 40–241 et seq., the legislature set up a detailed investigation and hearing process within the Commission for claims of this sort. Appellees contend that this process was intended to be the exclusive original remedy available to appellant. Appellant opposed the Motion by arguing that the Commission had power to deal with the adequacy of telephone services only to protect the public generally. The Commission allegedly lacked power to award her damages for torts and breach of contract so that she had *no* administrative remedy to resort to. The trial judge granted the motion to dismiss on January 29, 1976 and a final written judgment was signed and filed on March 5, 1976. Appellant appeals from this judgment.

Two basic issues emerged from the briefs and arguments of this case:

1. Do A.R.S. § 40–241 et seq., and § 40–321 et seq., or the doctrine of primary jurisdiction require appellant to first present her contract and tort claims against appellees, public service corporations, by means of a complaint to the Corporation Commission before suing in the Superior Court?

2. If appellant must first present her claims to the Commission, does this violate her constitutional rights to a jury trial and to recover damages?

Our decision on the first issue is dispositive of the appeal so that we do not reach the second issue.

### DISTINGUISHING THE DOCTRINES OF EXHAUSTION OF REMEDIES AND PRIMARY JURISDICTION

As noted below, this case clearly involves an issue concerning the doctrine of primary jurisdiction. However, this doctrine and the doctrine of exhaustion of remedies are so often confused that it is useful to distinguish the two rules.

"The exhaustion doctrine is concerned with the timing of judicial review of administrative action." 3 K. Davis, *Administrative Law Treatise* § 20.01 at 57 (1958). The doctrine applies only when an administrative agency has original jurisdiction. Once such jurisdiction exists, the exhaustion of remedies doctrine is used to determine whether or not the parties must completely exhaust the available administrative processes before seeking the aid of a court. Our legislature has incorporated the doctrine into A.R.S. § 40–253(A)–(B), which requires parties adverse to orders and decisions of the Arizona Corporation Commission to request a rehearing from the Commission before suing in any court. Our courts have recognized that this provision is an exhaustion of remedies rule. *State v. Arizona Corporation Commission*, 94 Ariz. 107, 110, 382 P.2d 222, 224 (1963); *General Cable Corp. v. Citizens Utilities Co.*, 27 Ariz. App. 386, 388, 555 P.2d 355, 357 (1976); *Kunkle Transfer & Storage Co. v. Superior Court*, 22 Ariz.App. 315, 526 P.2d 1270 (1974). Although exhaustion of remedies is a rule of judicial administration, *Campbell v. Chatwin*, 102 Ariz. 251, 257, 428 P.2d 108, 114 (1976), it is usually applied by virtue of express statutory mandate. *See Campbell, supra; State v. Arizona Corporation Commission, supra; Williams v. Bankers National Ins. Co.*, 80 Ariz. 294, 297 P.2d 344 (1956); *General Cable Corp., supra; Kunkle Transfer & Storage Co., supra.*

In contrast to the exhaustion of remedies doctrine, which governs *when* administrative action is subject to judicial review, the doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision in a particular case. Professor Davis states in his treatise:

The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court.

\*     \*     \*     \*     \*     \*

The principal reason behind the doctrine of primary jurisdiction is not and never has been the idea that "administrative expertise" requires a transfer of power from courts to agencies, although the idea of administrative expertise does to some extent contribute to the doctrine. The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts. Whether the agency happens to be expert or not, a court should not act upon subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements.

3 K. Davis, *Administrative Law Treatise* § 19.01 at 3–5. (Footnotes omitted).

The doctrine of primary jurisdiction is a discretionary rule created by the courts to effectuate the efficient handling of cases in specialized areas where agency expertise may be useful. Davis, *supra*, § 19.09 at 53. For purposes of determining whether an agency should have primary jurisdiction, the United States Supreme Court has stated a useful principle.

[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Far East Conference v. United States*, 342 U.S. 570, 574–5, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).

Two cases from other jurisdictions illustrate the purpose and operation of primary jurisdiction principles in telephone company contexts. In *Meyerson v. New York Telephone Company*, 65 Misc.2d 693, 318 N.Y. S.2d 900 (Sup.Ct.1971), over 80 plaintiffs sought injunctive relief requiring the defendant to provide good telephone service, as well as damages. The court noted:

The thrust of the instant complaint is not directed at any individual act or omission allegedly rendering service inadequate, but addresses itself to a generalized situation, namely, an alleged breakdown or impairment of telephone service generally, as it affects the plaintiffs herein, a situation which necessarily involves consideration of a technical complex of factors properly coming at least in the first instance, within the administrative purview of the Public Service Commission.

*Id.* at 695, 318 N.Y.S.2d at 902. On the basis of this reasoning, the court dismissed the action, holding that primary jurisdiction in the first instance was in the administrative agency.

The second illustrative case is *Grever v. Idaho Telephone Company*, 94 Idaho 900, 499 P.2d 1256 (1972). The Grevers sought a mandatory writ compelling the telephone company to provide service. The court noted that the Idaho Public Utilities Commission has the statutory power to prescribe rules for the performance of phone service. With this principle in mind, the court held that primary jurisdiction was in the commission. In so holding, the court described primary jurisdiction as a limited, discretionary doctrine.

The doctrine of primary jurisdiction is not an inflexible mandate but rather is predicated on an attitude of judicial self-restraint, and is generally applied when the court believes that considerations of policy recommend that the issue be left to

the administrative agency for initial determination.

Id. at 902, 499 P.2d at 1258.

Our search has revealed one Arizona case dealing directly with primary jurisdiction. In *Tucson Gas, Electric Light & Power Co. v. Trico Electric Coop., Inc.*, 2 Ariz.App. 105, 406 P.2d 740 (1965), Division 2 of this Court refused to find primary jurisdiction in the Corporation Commission, and affirmed the jurisdiction of the court to enjoin the invasion by one public service corporation of the certificated area of another. While not expressly using the term "primary", our Supreme Court held in *Trico Electric Cooperative v. Ralston*, 67 Ariz. 358, 196 P.2d 470 (1948) that the construction of a contract and the determination of its validity are judicial functions for the courts, not the Corporation Commission. *See General Cable Corp. v. Citizens Utilities Co.*, 27 Ariz. App. 381, 555 P.2d 350 (1974).

■ As the described facts of this case indicate, appellant Madeline Campbell took her claims initially to Superior Court without first presenting those claims to the Corporation Commission. Consequently, the issue here is one involving primary jurisdiction: was appellant required to assert her claims to the Commission before initiating a court action? Since the Superior Court was not asked to review any action or decision of the Corporation Commission, the doctrine of exhaustion of remedies really has no relevance, despite the parties' confusion of terms and doctrines.

### DID THE CORPORATION COMMISSION HAVE PRIMARY JURISDICTION IN THIS CASE?

■ In deciding questions of primary jurisdiction, the statutorily defined purposes and powers of the administrative agency are relevant indicators of the agency's particular skill and expertise in the specific area. The Arizona Corporation Commission, the agency in issue here, has broad constitutional and statutory power to regulate "public service corporations," defined in Article 15, section 2, Arizona Constitution, 1 A.R.S. to include most utilities, in-

cluding appellees in this case. By constitutional provision, the Commission can regulate rates and charges of public service corporations (Article 15, section 3, Arizona Constitution, 1 A.R.S.). Further, the Commission has broad constitutional powers to conduct hearings and investigate (Article 15, section 4, Arizona Constitution, 1 A.R.S.) and the legislature is empowered to enlarge, but not decrease, the Commission's powers by statute (Article 15, section 6, Arizona Constitution, 1 A.R.S.). The legislature has enacted statutes empowering the Commission to control almost every aspect of public service corporations. In particular, A.R.S. § 40–203 gives the Commission power to correct "insufficient practices" of public service corporations. The mandates of A.R.S. § 40–321(A) are even broader:

> A. When the commission finds that the equipment, appliances, facilities or service of any public service corporation, or the methods of manufacture, distribution, transmission, storage or supply employed by it are unjust, unreasonable, unsafe, improper, inadequate or insufficient, the commission shall determine what is just, reasonable, safe, proper, adequate or sufficient, and shall enforce its determination by order or regulation.

A.R.S. § 40–241 et seq., gives the Commission broad power to investigate, conduct hearings about, and inspect the records of public service corporations.

Through long experience and service, the Corporation Commission has developed specialized expertise in matters related to its regulation of the service and financial aspects of public service corporations. This specialized expertise enables the Commission to approach issues involving the service aspect of public service corporations with an appreciation for the relevant public policies and the best methods for achieving those policies.

■ In this case, appellees have consistently argued that appellant's complaint is concerned only with the technical manner and means of providing telephone service. Were appellees' contentions supported by

the complaint, we would have no trouble in affirming dismissal of the complaint on the ground of primary jurisdiction since questions involving only the manner and means of providing telephone service raise "issues of fact not within the conventional experience of judges," *Far East Conference, supra*, 342 U.S. at 574, 72 S.Ct. at 494, but within the duties and expertise of the Corporation Commission.

■ Despite appellees' contentions, however, appellant's complaint deals with much more than the mere manner and means of providing telephone service. As our summary of the complaint above indicates, appellant has proffered three claims in tort—for tortious interference with telephone service, intentional infliction of emotional distress, and invasion of privacy—and one claim for breach of contract. Obviously, each of these claims is elementally based on the manner and method of providing service, and other matters within the particular expertise of the Corporation Commission. However, the claims' most important aspects involve facts and theories of tort and contract far afield of the Commission's area of expertise and statutory responsibility. Indeed, appellant's tort and contract claims are the type of traditional claims with which our trial courts of general jurisdiction are most familiar and capable of dealing. *See Trico Electric Cooperative v. Ralston, supra; General Cable Corp. v. Citizens Utilities Co., supra; Gregg v. Delhi-Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411 (1961).

Thus, while it is undeniable that appellant's claims do involve the adequacy and method of telephone service and that such issues are within the Commission's jurisdiction under A.R.S. § 40–203 and § 40–321(A), these issues are not predominant. This case, as determined by the complaint, does not involve the question of whether appellees are adequately providing telephone service to the public. Further, appellant is not seeking injunctive relief to establish broad public doctrines, or rights to service or levels of service. In short, appellant's case involves relatively simple tort and contract

issues revolving around a central inquiry: whether, under traditional judicial principles, appellees committed a civil wrong against appellant. Because these issues predominate, it is clearly not essential for the courts to "refrain from exercising [their] jurisdiction until after" the specialized administrative agency "has determined some question or some aspect of some question arising in the proceeding before the court." Davis, *supra*, § 19.01, at 3. As a result, we decline to apply the discretionary doctrine of primary jurisdiction so as to vest *exclusive* primary jurisdiction in the Corporation Commission.

Since the legislature has not enacted a statute giving the Corporation Commission exclusive jurisdiction in cases of this sort, we hold that the Superior Court had jurisdiction of this matter. The judgment is reversed and the case remanded to the trial court for proceedings consistent with our decision.

JACOBSON, P. J., Department B, and WREN, J., concur.