690 P.2d 119

**J.W. HANCOCK ENTERPRISES, INC., dba Camelot Homes (Corp.), Plaintiff-Appellant,**

v.

**ARIZONA STATE REGISTRAR OF CONTRACTORS, an agency of the State of Arizona; State of Arizona, Aaron Kizer, State Registrar of Contractors; and Stephen Hancock and Mary Hancock, his wife, Defendants-Appellees.**

**No. 1 CA–CIV 5870.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 21, 1984.

Pavilack, Spack & Mulchay, P.C. by Lars O. Lagerman, Lawrence L. Pavilack, Scottsdale, for appellant.

Robert K. Corbin, Atty. Gen. by Patrick M. Murphy, Chief Counsel, Financial Fraud Division, David M. Talamante, Lee Montgomery, Asst. Attys. Gen., Phoenix, for appellees Registrar and Kizer.

Kunz & Waugh, Ltd. by John A. Shannon, Jr., Donald R. Kunz, Phoenix, for appellees Hancock.

## OPINION

GRANT, Judge.

This appeal arose out of a contract dispute between J.W. Hancock Enterprises, Inc., dba Camelot Homes (Camelot) and Stephen and Mary Hancock. In cause no. C–397842 Camelot filed a declaratory judgment action to determine whether it had contracted to install zonolite wall insulation in a house constructed for and purchased by the Hancocks. In cause no. C–397843 Camelot sought through statutory appeal a review of the decision by the Arizona State Registrar of Contractors (Registrar) finding Camelot in violation of A.R.S. § 32–1154(3)[1] for failing to install zonolite wall insulation in the residence Camelot constructed and sold to the Hancocks. The two actions were consolidated in the trial court.

On appeal the following issues are raised:

(1) whether the Registrar construed and interpreted a disputed contract thereby violating article III of the Arizona Constitution;

(2) whether the decision of the Registrar was illegal, arbitrary and capricious, and contrary to the law;

(3) whether the trial court abused its discretion in the statutory appeal in refusing to consider additional evidence;

(4) whether the decision in the statutory appeal should be given preclusive effect in the declaratory judgment action;

(5) whether the trial court awarded excessive attorneys' fees in the declaratory judgment action.

---

**1.** References to A.R.S. § 32–1154 are to the version in effect in 1977.

## FACTS

The facts are as follows: On January 17, 1977, Camelot, a licensed contractor, entered into a written agreement with the Hancocks. Camelot agreed to construct a house on lot 28 in a development known as "Summer Shadows", and the Hancocks agreed to purchase improved lot 28. Thereafter, on February 2, 1977 the Hancocks and Camelot entered into a supplemental agreement. For $495 Camelot was to install "R–30 insulation package w/2" and batts and $2 \times 2$ furring at ext. masonry walls."

After moving into the residence and unsuccessfully trying to resolve a dispute as to whether the February 2nd supplement required installation of zonolite wall insulation, the Hancocks filed a complaint with the Registrar sometime in 1978. A hearing was held on August 20, 1979 concerning the complaint. Camelot did not retain an attorney to represent it at the hearing. The Registrar issued a Decision and Order on September 11, 1979 finding that the parties had contracted for an insulation package including zonolite wall insulation. Based on this finding the Registrar found a violation of A.R.S. § 32–1154(3), which requires a licensed contractor to comply with the agreed upon plans and specifications. The Registrar ordered Camelot to either install the zonolite or have its contracting license suspended.

Camelot retained present counsel apparently after the Registrar's decision. Camelot then petitioned the Registrar for a rehearing, in part moving to include additional evidence. The Registrar denied the petition for rehearing and declined to admit additional evidence.

On October 29, 1979 Camelot filed the instant statutory appeal and declaratory judgment action. In the statutory appeal, the trial court entered judgment, which included rule 54(b) language, on November 25, 1980 affirming the decision of the Registrar. Based on the decision in the statu-

tory appeal, the lower court subsequently granted summary judgment in favor of the Hancocks in the declaratory judgment action. Camelot timely appealed both judgments.

## CONSTITUTIONALITY

After a hearing the Registrar found the February 2, 1977 supplemental agreement as it related to the additional insulation, to be ambiguous and construed the ambiguity against Camelot, the drafter of the document. Therefore, since zonolite wall insulation was not installed as required the Registrar found Camelot in violation of A.R.S. § 32–1154(3). A.R.S. § 32–1154, in part, provides:

> The registrar may upon his own motion, and shall upon the verified complaint in writing of any person, investigate the acts of any contractor within the state, and may temporarily suspend, with or without the imposition of specific conditions in addition to increased surety bond or cash ·deposit requirements, or permanently revoke any or all licenses issued under this chapter if the holder thereof, while a licensee hereunder, is guilty of or commits any of the following acts or omissions:

> ·* * * * * *

> 3. Departure from or disregard of plans or specifications ... in any material respect, and prejudicial to another without consent of the owner or his duly authorized representative, and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plans and specifications ....

Camelot argues that where there is a bona fide dispute over the interpretation of a contract, the Registrar of Contractors does not have jurisdiction to resolve the contractual dispute. The resolution of bona fide contractual disputes is solely a judicial function, it is argued,[2] which can-

---

**2.** Camelot also alludes to an argument that A.R.S. § 32–1154(3) does not authorize the Registrar to adjudicate a contractual dispute. A

reading of the statute in question makes it clear that implicitly the legislature sought to delegate just such authority. *See generally Pressley v.*

not constitutionally be exercised by an administrative agency. Camelot relies on the decisions in *Trico Electric Cooperative, Inc. v. Ralston,* 67 Ariz. 358, 196 P.2d 470 (1948), and *General Cable Corp. v. Citizens Utilities Co.,* 27 Ariz.App. 381, 555 P.2d 350 (1976).

Appellees, relying on the decision in *Batty v. Arizona State Dental Board,* 57 Ariz. 239, 112 P.2d 870 (1941), counter with the argument that the legislature may constitutionally confer quasi-judicial powers upon an administrative agency. The power to determine facts and apply the law is not exclusively judicial, so that the real issue is one of primary jurisdiction—which body, the Registrar or the courts, should first address the issue in dispute. Applying the primary jurisdiction test discerned from *Campbell v. Mountain States Telephone & Telegraph Co.,* 120 Ariz. 426, 586 P.2d 987 (App.1978), appellees conclude that the Registrar properly resolved the contractual dispute incidental to its regulatory function.

The starting point in any separation of powers analysis is article III of the Arizona Constitution which provides:

> The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Despite language which appears to absolutely prohibit any comingling of the three types of powers, Arizona courts have not required absolute separation of powers. *See, e.g., State v. Marana Plantations, Inc.,* 75 Ariz. 111, 252 P.2d 87 (1953) (upholding the constitutionality of administrative agency's rulemaking powers, however, finding the delegation at issue unconstitutional); *Burney v. Lee,* 59 Ariz. 360, 129 P.2d 308 (1942) (recognizing both the legislature and the courts can constitutionally

exercise their powers in determining rules of procedure in courts); *Batty v. Arizona State Dental Board* (upholding the constitutionality of administrative agencies' determinations of fact and applying the law as quasi-judicial); *Udall v. Severn,* 52 Ariz. 65, 79 P.2d 347 (1938) (one branch may exercise the powers of another branch when such exercise is merely auxiliary to and dependent upon the proper exercise of legitimate power of the one branch).

The exact origin of the separation of powers theory is disputed. Some trace the theory to Aristotle, while others argue that only in the 17th century did a doctrine based on separate powers, as we know it today, emerge. "The oracle who is always consulted 'on the subject of separation of governmental powers' is the celebrated Montesquieu." Parker, *The Historic Basis of Administrative Law: Separation of Powers and Judicial Supremacy,* 12 Rutgers L.Rev. 449, 458 (1958), *quoting The Federalist,* No. 47 (Madison). *See also* Greenbaum & Wirtz, *Separation of Powers: The Phenomenon of Legislative Courts,* 42 Ind.L.J. 153, 158 (1967). Montesquieu stated:

> When the legislative and executive powers are united in the same person, or in the same body of magistracy, there can be then no liberty; because apprehensions may arise, lest the same monarch or senate should enact tryannical laws, to execute them in a tyrannical manner.

> Again, there is no liberty, if the power of judging be not separated from the legislative and executive powers. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would then be the legislator. Were it joined to the executive power, the judge might behave with all the violence of an oppressor.

1 F. Cooper, *State Administrative Law* 15–16 (1965), *quoting* XI *L'Esprit des Lois* 215–17 (1750).

*Industrial Commission,* 73 Ariz. 22, 236 P.2d 1011 (1951); *Oracle School District No. 2 v.*

*Mammoth High School District No. 88,* 130 Ariz. 41, 633 P.2d 450 (App.1981).

Political scientists have long recognized that the separation of powers doctrine does not forbid all blending of powers, but only is intended to keep one branch of government from exercising the whole power of another branch. *E.g.*, 1 F. Cooper, *supra*, at 15–16; Kaufman, *The Essence of Judicial Independence*, 80 Columbia L.Rev. 671, 688–90 (1980); Parker, *supra*, at 464–66. Courts today also recognize that absolute independence of the branches of government and complete separation of powers is impracticable. *E.g.*, *State ex rel. Schneider v. Bennett*, 219 Kan. 285, 547 P.2d 786 (1976). *See also Southwest Engineering Co. v. Ernst*, 79 Ariz. 403, 291 P.2d 764 (1955); *Batty v. Arizona State Dental Board.*

Examples of the blending of powers are many: administrative agencies' rulemaking power; administrative agencies' adjudicative functions; judicial rulemaking power; executive veto of legislation; impeachment and conviction of high government officials by the legislature. Use of the terms quasi-judicial and quasi-legislative is implicit recognition of such blending of powers. While some of this overlap is expressly authorized by our constitution, nevertheless, it is clear that almost every day an absolute theory of separation of powers would be violated. Complex modern government, however, requires such a blending of powers in order to operate with any degree of efficiency. That does not mean we should cast aside the doctrine of separation of powers. Rather the utility of the doctrine is preserved not by mechanistic formulas, but by ad hoc determinations focused on insuring sufficient checks and balances to preserve each branch's core functions.

██ Previous decisions by Arizona courts have failed to articulate any meaningful definitions of legislative, executive, and judicial functions. These terms have not and cannot be specifically defined, but must take shape and form from ad hoc decisions. Unfortunately Arizona courts have not even articulated any reasoned method to decide cases on an ad hoc basis. To rectify this we have decided to adopt the test proposed by the Kansas Supreme Court in *State ex rel. Schneider v. Bennett.*

In *Bennett* the court enunciated the following method for analyzing separation of powers claims:

When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented.

\* \* \* \* \* \*

It seems to us that to have a usurpation of powers there must be a significant interference by one department with the operations of another department. In determining whether or not an unconstitutional usurpation of powers exists, there are a number of factors properly to be considered. First is the essential nature of the power being exercised. Is the power exclusively executive or legislative or is it a blend of the two? A second factor is the degree of control by the legislative department in the exercise of the power. Is there a coercive influence or a mere cooperative venture? A third consideration of importance is the nature of the objective sought to be attained by the legislature. Is the intent of the legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature? A fourth consideration could be the practical result of the blending of powers as shown by actual experience over a period of time where such evidence is available. We do not wish to imply that these are the only factors which should be considered but it seems to us that they have special significance in determining whether a usurpation of powers has been demonstrated.

219 Kan. at 290–91, 547 P.2d at 792–93.

This test will determine if one branch is exercising "the powers *properly* belonging

to either of the others." Ariz. Const. art. III (emphasis added). While providing the necessary flexibility to government, the test preserves the essential goal of the separation of powers theory—i.e., preventing the concentration of the whole power of two or more branches in one body.

Such a test is consistent with Arizona case law. Admittedly Arizona courts have frequently stated that no branch may exercise the powers belonging to others. *E.g., Ahearn v. Bailey,* 104 Ariz. 250, 451 P.2d 30 (1969); *Giss v. Jordan,* 82 Ariz. 152, 309 P.2d 779 (1957). Nevertheless our courts have recognized the necessity of and permitted blendings of powers. *E.g., State v. Marana Plantations, Inc.; Burney v. Lee; Batty v. Arizona State Dental Board; Udall v. Severn.*

■ We now must determine if A.R.S. § 32–1154(3) constitutes a usurpation of judicial power. The first factor is the classification of the essential nature of the power exercised. At the hearing before the Registrar of Contractors the complainants present their evidence and then the contractor can produce its evidence. Generally the adjudication of a dispute between two private parties is considered judicial. *See State ex rel. Hovey Concrete Products Co. v. Mechem,* 63 N.M. 250, 316 P.2d 1069 (1957). Next we focus on the degree of control. There is no exertion of coercive influence over the judiciary since the judiciary has the ultimate power of review. The Registrar's power is limited to suspending or revoking a contractor's license, or attaching conditions to the license. Money damages may not be awarded. Third, we must consider the nature of the legislature's objective. A.R.S. § 32–1154 is the enforcement mechanism in the licensing scheme relating to contractors. As such its objective is legitimately regulatory, not of the judiciary, but of licensed contractors.

Finally, we must determine the practical result of such a blending of powers. This specialized agency is authorized to construe contracts only ancillary to its regulatory purpose. Dissatisfied contractors have recourse to the courts pursuant to a statutory appeal, although the scope of review is limited, or they may institute an action in superior court. We find that the limited ancillary power to construe contracts does not threaten the core functions of the courts.

We also believe public policy favors such a blending of powers here. There are many deviations from agreed upon plans and specifications by a licensed contractor which would not justify the time and effort of going to a court. For example, in this case the insulation in question was found by the Registrar to be valued at $195. A contrary holding by this court would effectively force most complainants to bring suit in superior court prior to resolution of their complaint filed with the Registrar. Absent resort to the Registrar it is conceivable that a breach of contract could go unremedied.

Camelot argues that the Registrar may independently determine whether a violation of A.R.S. § 32–1154(3) occurred only where the parties agree as to what the plans and specifications require. Where, however, there is a bona fide dispute as to the terms of the agreement or the meaning of the agreed upon terms, it is urged that the Registrar must await a resolution of this type of dispute by a court. We do not believe that adjudicating either type of dispute is more or less judicial. Both situations involve the finding of facts and the application of law to those facts. Whether or not an administrative agency may make the determination is a question properly decided by application of the *Bennett* test adopted today.

In summation, we find that the construction and interpretation of disputed contractual terms by the Registrar of Contractors pursuant to A.R.S. § 32–1154(3) may constitutionally be exercised by the Registrar ancillary to its regulatory function.

■ We conclude that the resolution of a bona fide contractual dispute, involving a licensed contractor, by the Registrar of Contractors ancillary to its regulatory mission does not violate article III. We must

now determine whether our conclusion is consistent with prior decisions. In *Trico Electric Cooperative, Inc. v. Ralston,* 67 Ariz. 358, 196 P.2d 470 (1948), a class action suit was commenced in superior court seeking to void the sale of all the electric transmission and distribution lines and facilities, and all water distribution properties of the Eloy Light, Power & Utility Company to Trico Electric. The trial court granted judgment on the pleadings decreeing the sale illegal and void.

One of the issues before the Arizona Supreme Court in *Trico* was whether the courts or the Arizona Corporation Commission had the jurisdiction and power to determine the validity of the agreement. By statute the Corporation Commission had to approve the sale by a public utility of its property. A.C.A. § 69–236 (1939). The *Trico* court held:

> Clearly the construction of a contract is a judicial function and the courts, not the corporation commission, have the jurisdiction to determine the validity of said option agreement, although eventually the contract of sale, if valid, must have the sanction and approval of the latter before it becomes effective.

67 Ariz. at 365, 196 P.2d at 474.

In *General Cable Corp. v. Citizens Utilities Co.,* 27 Ariz.App. 381, 555 P.2d 350 (1976), plaintiff corporation sought to void a contract for utility services because the charges were unreasonable in violation of article 15, § 12 of the Arizona Constitution and A.R.S. § 40–361(A). The plaintiff had filed a complaint with the Arizona Corporation Commission, but the Commission dismissed the complaint stating it lacked jurisdiction to determine the legality of the contract. The court of appeals found *Trico* controlling, holding:

> We agree with the trial court that the construction and interpretation to be given to legal rights under a contract reside solely with the courts and not with the Corporation Commission.

27 Ariz.App. at 386, 555 P.2d at 355.

In *Batty v. Arizona State Dental Board* our supreme court held that the power to determine facts and apply the law to those facts can constitutionally be delegated to administrative agencies. The court stated:

> When, however, the power to hear and determine whether a certain state of facts which requires the application of a law exists is committed to an administrative or executive officer, although the particular power may be identical with one which is also exercised by a court, it is, strictly speaking, not "judicial" but "*quasi*-judicial" power.

> * * * * * *

> We think the term "judicial" powers as used in constitutional provisions like sec. 1, art. 6 of our Constitution, on both reason and authority, includes only those powers which as a matter of law can be conferred only upon courts as such, and does not include the power to hear and determine facts and apply the law thereto which has been conferred on administrative or executive officers acting in the proper exercise of the duties imposed upon them by law.

57 Ariz. at 246, 112 P.2d at 873. Thus, quasi-judicial power was born in Arizona.

The construction and interpretation of contracts is nothing more than a determination of the facts—either from the face of the agreement or with parol evidence, and applying the law—rules of construction. The Arizona Supreme Court, however, has never reconciled these two lines of cases. By use of the *Bennett* test one can make a rational distinction.

The *Bennett* test, one must remember, is essentially a balancing test—the degree of blending permitted versus the risk of coercive influence. In *Trico Electric* the statute involved provided:

> No railroad, street railroad, pipe line, gas, electric, telephone, telegraph, or water corporation shall sell, lease, assign, mortgage or otherwise dispose of or encumber the whole or any part of its railroad, line, plant, or system, necessary or useful in the performance of its duties to the public, or any franchise or permit or any right thereunder; nor merge the

same or any part thereof, with any other public service corporation, without first having secured from the commission an order authorizing it to do so. Every such disposition, encumbrance or merger made other than in accordance with the order of the commission authorizing the same shall be void. . . .

A.C.A. § 69–236 (1939). While in *General Cable* the pertinent statute stated:

Charges demanded or received by a public service corporation for any commodity or service shall be just and reasonable. Every unjust or unreasonable charge demanded or received is prohibited and unlawful.

A.R.S. § 40–361(A).

In both *Trico* and *General Cable* the statutes provided expansive authority to interfere with the judiciary. The Corporation Commission, had they been permitted to pass on the validity of the contracts in question, would not have been exercising ancillary powers, but direct adjudicatory powers. The statutes in question, in practice, would have empowered the Commission to dictate terms and conditions to the public service corporations involved. Also, in both cases, the Corporation Commission could fulfill its mission by assuming the legality of the contracts in question. It was not necessary in either *Trico* or *General Cable* to determine the legal rights and duties of the parties to the contract, but only to determine whether or not the contract, whatever its specific terms were, was enforceable as a whole. Thus, in a practical sense the language in both cases is dicta, as it pertains to the construction of a contract where its terms are disputed, since neither case involved a dispute as to the meaning of the contract.

*Batty*, in contrast, involved a license revocation hearing, where the Dental Board had to determine whether the charges against Dr. Batty were true, and, if so, whether to revoke his license as a dentist. The adjudication of the charges was a necessary function prior to any license revocation decision. Given the limited ancillary intrusion into the judicial sphere, the *Batty* court found no article III violation.

The instant case is closer to *Batty* than to *Trico* and *General Cable*. The Registrar possesses very limited jurisdiction, over licensed contractors, and ancillary to its policing function must construe contracts to determine whether there is a violation of A.R.S. § 32–1154(3). The Registrar must accept the plans and specifications to which parties agree and cannot dictate terms.

■ Appellees' arguments concerning primary jurisdiction are misplaced. The doctrine of primary jurisdiction is a judicial device by which the power to make initial determinations is allocated between courts and agencies. *Campbell v. Mountain States Telephone & Telegraph Co.;* 4 K. Davis, *Administrative Law Treatise* § 22:1, p. 81–82 (2nd ed. 1983). The doctrine is only applicable when suit is originally brought in the courts and an agency also has concurrent jurisdiction over the dispute, or a portion of it. *See Campbell v. Mountain States Telephone & Telegraph Co.;* 4 K. Davis, *supra,* at 81–82.

■ We therefore hold that the Registrar of Contractors may constitutionally resolve bona fide contractual disputes, involving licensed contractors, to determine whether or not a contractor violated A.R.S. § 32–1154(3).

### REGISTRAR'S DECISION

Camelot argues on appeal that the decision of the Registrar of Contractors is illegal, arbitrary and capricious, and contrary to law. Essentially it is urged that the Registrar's decision is not supported by the evidence and the Registrar abused its discretion in refusing a post-hearing offer to supplement the record.

The record amply supports the Registrar's decision. Darrell Worker, formerly an investigator with the Registrar of Contractors, testified that Bob Anderson, superintendent for Camelot, in July, 1978 told Worker that Camelot had mistakenly forgotten to install the zonolite. Stephen

Hancock testified that Trevor Hancock of Camelot Homes told the Hancocks in January, 1977 that the additional insulation referred to in the February 2, 1977 supplemental agreement included zonolite. Also, Stephen Hancock indicated that Jay Denniston of Camelot Homes confirmed in February, 1977 that zonolite was part of the package the Hancocks purchased. Mary Hancock confirmed the testimony of her husband and recalled Trevor Hancock explaining to her what zonolite insulation is.

■ At the hearing Camelot presented the testimony of Trevor Hancock, who denied telling the Hancocks that the $495 insulation package included zonolite. This testimony merely created a conflict in the evidence, which the Registrar, as the trier of fact, had to resolve. We find substantial evidence in the record to support the Registrar's decision. *See Welsh v. Arizona State Board of Accountancy,* 14 Ariz. App. 432, 484 P.2d 201 (1971).

■ The second point raised is the Registrar's refusal to admit additional evidence proffered after the original decision. Camelot has produced no evidence indicating that the additional evidence it sought to introduce could not have been submitted at the time of the hearing. We therefore find the denial of the motion to supplement the record is not arbitrary and capricious. *Higgins v. Industrial Commission,* 16 Ariz.App. 136, 491 P.2d 1138 (1971) (denial of post-hearing offer of additional evidence did not deny substantial justice). *See also Torres v. Industrial Commission,* 16 Ariz. App. 404, 493 P.2d 1209 (1972).

## TRIAL COURT'S DECISION

Camelot also argues the trial court abused its discretion in refusing to receive the evidence rejected by the Registrar. A.R.S. § 12–910(A), in part, provides:

No new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency shall be heard by the court, except in the event of a trial de novo or cases where in the discretion of

the court justice demands the admission of such evidence.

We find no abuse of discretion here.

■ Camelot had ample opportunity to cross-examine witnesses at the administrative hearing and present its own case. There is no evidence presented to explain why Camelot could not have procured its additional evidence at the hearing before the Registrar. Therefore, we cannot find an abuse of discretion in the trial court's decision not to hear additional evidence. *See Sundown Imports, Inc. v. Arizona Department of Transportation, Motor Vehicle Division,* 115 Ariz. 428, 565 P.2d 1289 (App.1977).

## PRECLUSIVE EFFECT

In the next assignment of error Camelot argues that the decision by the Registrar, affirmed on statutory appeal, should not have been given preclusive effect in the declaratory judgment action. Distilled, Camelot's position is that the decision by the Registrar, not being a judicial adjudication, cannot be given preclusive effect.

Arizona courts have recognized that where, as here, administrative agencies act in adjudicative capacities, courts will, where appropriate, give preclusive effect to such decisions. In *Campbell v. Superior Court,* 18 Ariz.App. 287, 501 P.2d 463 (1972), this court stated:

The great weight of authority holds that the judicial doctrine of *res judicata* is part of administrative law. 2 Davis, Administrative Law Treatise § 18.02 (1958). The doctrine "rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, 905 (1948). Justice White of the United States Supreme Court succinctly summarized the rule when he wrote that, "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the

courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966); *see Martin v. Industrial Commission*, 4 Ariz.App. 547, 422 P.2d 178 (1967).

*Id.* at 290, 501 P.2d at 466. This principle was reaffirmed by our supreme court in *Yavapai County v. Wilkinson*, 111 Ariz. 530, 534 P.2d 735 (1975).

▇▇▇ Collateral estoppel, which bars relitigation between parties of issues necessary to a determination in a different proceeding, is the applicable rule. *See id.* The elements necessary to invoke collateral estoppel are:

(1) issue is actually litigated in previous proceeding;

(2) full and fair opportunity to litigate the issue;

(3) resolution of such issue is essential to decision;

(4) valid and final decision on the merits;

(5) common identity of parties.

*See Matusik v. Arizona Public Service Co.*, 141 Ariz. 1, 684 P.2d 882 (Ariz.App. 1984); *Food for Health Co. v. 3839 Joint Venture*, 129 Ariz. 103, 628 P.2d 986 (App. 1981). Camelot does not argue that these elements are not present here. We accordingly find the decision of the lower court in giving preclusive effect to the Registrar's decision, which had previously been affirmed on statutory appeal, to be proper.

### ATTORNEYS' FEES

Finally, Camelot challenges the award of $1,000 to the Hancocks in the declaratory judgment action for attorneys' fees pursuant to A.R.S. § 12–341.01. Camelot argues the trial court impermissibly awarded attorneys' fees for services rendered before the Registrar and in the statutory appeal.

The Hancocks contend that the award is reasonable because: the trial court could award fees for both actions and the trial court reduced the fees from $1,815 to $1,000.

▇▇▇ We need not decide whether or not A.R.S. § 12–341.01 would permit recovery for services rendered in the statutory appeal had they been requested. The Hancocks did not seek attorneys' fees in the statutory appeal and the judgment entered in the declaratory judgment action made it clear that the attorneys' fees awarded were only for the declaratory judgment action. A review of the evidence on attorneys' fees reveals that the Hancocks incurred $383 in attorneys' fees in the declaratory judgment action. The judgment is to be modified to reduce the award of attorneys' fees to $383.

The judgment in the statutory appeal, cause no. C–397843, is affirmed, and the judgment in the declaratory judgment action, cause no. C–397842, is affirmed as modified.

BROOKS, P.J., and CONTRERAS, J., concur.